# MARCH, 1938.

E. A. CARTER, RESPONDENT, v. FARMERS BANK OF CHARITON COUNTY, MISSOURI; O. H. MOBERLY; COMMISSIONER OF FINANCE; G. E. LANCASTER, SPECIAL DEPUTY COMMISSIONER OF FINANCE, APPELLANTS.—108 S. W. (2d) 152.

Kansas City Court of Appeals. May 4, 1938.

*J. A. Collet* for respondent.

*Jerome Walsh, L. E. Merrill* and *Roy W. Rucker* for appellants.

CAMPBELL, C.—Plaintiff's petition alleged that on June 25, 1927, John Welch and his daughter, Edith Clavin, were the owners of 440 acres of land in Chariton county, Missouri; that Welch and his daughter had become indebted to the Farmers Bank of Chariton county, Missouri, hereinafter called the bank, in the sum of $22,134.70, evidenced by their notes, and that said indebtedness was secured to the bank by deeds of trust in which the aforesaid land was conveyed; that Welch and his daughter offered to convey said land in discharge of said indebtedness, but as there was no buyer for the land at a price which would satisfy said indebtedness, the board of directors of the bank decided that it would be to the best interest of the bank to cause the land to be conveyed to a trustee for the bank who would hold the same until the land could be sold and the proceeds applied in discharge of said debt; that it was thereupon agreed between the officers of the bank and plaintiff that the said debts would be reduced in the amount of $11,710 by the payment of that amount in equal sums by A. W. Zillman, C. H. Brandt, John D. Taylor and plaintiff, and that subject to the unpaid portion of said debts the land would be conveyed to plaintiff with the express agreement and understanding by and between plaintiff, his associates and officers of the bank that the title to the land would be held by plaintiff, the land managed and controlled for the use and benefit of the bank, the proceeds arising from the rental of the land to be paid to the bank, and that if and when said land should be sold the amount realized therefrom was not sufficient to discharge said debts, the bank would reimburse plaintiff and his said associates for the money advanced by them; that under the terms of said understanding plaintiff and his said associates each advanced to the bank $2,927.50, which sum the bank received and credited on the debts of Welch; that pursuant to said understanding the land was conveyed to plaintiff for the benefit of the bank; that thereafter plaintiff collected the rental of the land and paid same to the bank; that forty acres of the land was sold by plaintiff, as trustee, and the proceeds paid to the bank; that at no time have the parties in interest had opportunity to sell the land for a sum sufficient to return to plaintiff and his associates the sum advanced by them. The petition further alleged that the bank closed its doors on December 5, 1935; that its property was taken over by the finance commissioner of Missouri who proceeded in liquidation; and that plaintiff's claim was duly filed with the commission, denied, and this suit timely brought.

The answer was a general denial.

Trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $4,395.15. The defendants have appealed.

The evidence shows that on June 25, 1927, John Welch and his

daughter, Edith Clavin, were the owners of about 440 acres of land in Chariton county, Missouri, upon which they had theretofore given deeds of trust to secure the payment of their notes to the bank in the face amount of $21,710. The loans had been criticised by the finance department and were considered by the bank to be excessive in the sum of $11,710. In the "readjustment" of the loans Edith Clavin conveyed her interest in the land to John Welch and the latter executed his note in the sum of $10,000 to the bank and secured the payment thereof by a deed of trust on the land. The balance of the notes, $11,710, was paid to the bank by four of its directors, namely, Taylor, Brandt, Zillman and plaintiff, in equal amounts. Welch, as his part of the transaction, conveyed the land to plaintiff and plaintiff executed "a declaration of trust" in which it was recited that he had received the conveyance from Welch. "That while the record title to the said land is vested in me absolutely, I hereby declare that I hold said title for myself, A. W. Zillman, Henry Brandt and John D. Taylor; that we jointly own the same in equal shares and I agree to convey said land at any time that the said parties or any two of them may direct me. I further declare that I have this day executed and delivered to the Cashier of the Farmers Bank of Chariton County my deed in blank conveying said land and I authorize the Cashier of said bank at any time to insert the name of any one of the above named persons, or of any person that they, the above named persons, may direct, and deliver the said deed upon the terms and conditions to be designated by the said Zillman, Brandt and Taylor and myself, if living." The declaration of trust and the "deed in blank" were delivered to the cashier of the bank. Plaintiff took possession of the land, rented it, and paid the rental to the bank. The bank, acting through its cashier, sold forty acres of the land and retained the proceeds of sale. When the plaintiff paid the one-fourth part of the $11,710 to the bank the cashier said to him, "that it (money) would be paid back." The entire "readjustment" above stated was brought about through mutual understanding between all of the active members of the board of directors of the bank, six in number. In 1931, plaintiff and Brandt, "older members" of the board, came to the board of directors of the bank and suggested that the money paid by them to the bank "ought to be paid back," and a proposition was made that a part of the money paid to the bank by plaintiff and his associates be paid and "certificates of deposit be given." Objection was made to the proposition on account of banking conditions. Thereupon the active members of the bank, including the cashier, executed a writing in which it was stated that Welch, prior to July, 1927, owed the bank $22,134.70 (evidently a part of the debt was interest), secured by a deed of trust; that Welch was unable to pay the debt, and that plain-

tiff and his associates agreed that the record title of the land would be vested in plaintiff; that plaintiff and his said associates would pay to the bank the sum of $11,710, "it being understood at the time that the said payment by the aforesaid parties was made for the accommodation of said bank. At the time of said payment, the aforesaid bank held, and still holds a first deed of trust against said land in the amount of $10,000. It was understood and agreed between the said parties and the board of directors of said bank at the time the aforesaid parties made such payment that if they were unable to dispose of said land for a sufficient sum to pay the $10,000 first deed of trust due said bank, and to fully reimburse them for the sum of $11,710, that the aforesaid persons were to be reimbursed out of the money belonging to said bank.

"Now, Therefore, for the protection of the aforesaid E. A. Carter, A. W. Zillman, C. H. Brandt, and John D. Taylor, we, the undersigned, constituting the owners and holders of a majority of the stock of the Farmers Bank of Chariton County, Missouri, hereby agree that when said land shall be disposed of, if the aforesaid parties shall suffer any loss because of the payment aforesaid, and the then board of directors of the Farmers Bank of Chariton County shall fail, or refuse to reimburse the said persons for their said loss, that the matter shall be submitted to the stockholders of the said bank for their action at a stockholders' meeting, and we jointly, and severally, pledge ourselves that we will cast our votes according to our stock in said bank in favor of reimbursing the said parties for any loss that they shall sustain."

The entire transaction was disclosed to the finance department. The department in 1933, wrote to the bank as follows: "The loan of John Welch is in reality 'other real estate,' and it should be set up on your books under the proper account." In reply the president of the bank wrote a letter as follows:

"John Welch Loan: Some years ago, this tract of land 435 acres, was held, one-half interest in John Welch, and one-half interest in his daughter. This loan ran up in the neighborhood of $20,000.00. At that time, it was decided by the board that this loan would have to be reduced to the $10,000.00 basis. Four members of the board put up a sufficient amount of money and paid all but $10,000.00 of this loan. The land, subject to the $10,000.00 loan, was deeded to Mr. E. A. Carter. At that time, Mr. Carter executed a deed in blank, together with a declaration of trust, in which he declared that he held the title for the benefit of himself and the three members of the board associated with him; that, at any time it was desired, or could be done, the land would be sold, the bank debt paid, and the balance of the sale price distributed, in equal shares, to the four mem-

bers of the board paying this sum of money. This property has not been deeded to the bank, but is still held under the terms of the declaration of trust. The farm is managed by Mr. Carter, and the proceeds applied to the taxes and interest.''

The evidence further shows that there was no entry made upon the records of the bank relating to any action of its board of directors concerning any of the matters above stated.

The defendants' first point is that the court erred in refusing their requested instruction in the nature of a demurrer to the evidence for the reason there was no evidence showing that the board of directors of the bank ever consented to reimburse plaintiff for any loss he might have sustained in connection with the Welch loan, and that there was no written record of approval or disapproval of the transaction with reference to the Welch loan.

In arguing this point the defendants say that the records of the bank are silent ''on the subject of this litigation;'' that the board of directors of the bank were required by law to keep a record of every financial transaction involving more than $100.00, and that section 5936, Revised Statutes 1929, provides that ''no bills payable shall be made . . . except with the consent of the board of directors.''

In the case of Union National Bank of Kansas City v. Lyons, 220 Mo. 538, 119 S. W. 540, the plaintiff's petition alleged that it loaned to the bank, of which the defendant Lyons was at the time of trial receiver, the sum of $10,000, for which the borrower bank through its cashier executed a note for the sum loaned. The note was renewed several times. The last renewal note was attached to the petition and judgment was prayed for the amount thereof. The court permitted the plaintiff to recover for money lent, and in doing so said:

''This suit is not bottomed upon the note, and respondent's success in this case does not depend upon the validity of that instrument. It is sufficient that appellant had the power to borrow the money, and that it did in fact borrow it. There was sufficient vitality and force in this transaction to enable appellant to receive the $10,000.00 from respondent, and now, after enjoying the benefits thereof, it attempts to repudiate the entire transaction. In so far as this thory of the case is concerned, it is wholly immaterial that appellant's promise was contained in a note which was not executed according to law. If it repudiates the note for the reason that the Board of Directors had not authorized its execution, then this court would sanction rank injustice to hold that payment of that money need not be made at all. Such is not the law. The bank was not exempt from the common obligation to do justice which binds individuals. Such obligations rest upon all persons, whether natural or artificial. If the bank obtained money, and by mistake or without au-

thority of law executed therefor an invalid note, then it was its duty under this general obligation to do justice to refund it. Under those conditions an implied obligation arose on the part of appellant to repay the money so obtained."

In the present case the bank failed to make a record of the transaction and now seeks to profit because of such failure. This it may not do. [Lyons case, supra; Ferrell v. Milford State Bank. et al., 19 S. W. (2d) 312.]

The defendants further contend the petition declared upon a contract between plaintiff, his associates and the bank and that the recovery was on an implied contract. It is not necessary to cite authority in support of the pronouncement that in an action upon an express contract recovery may not be had on an implied contract. However, this rule does not aid the present defendants. Plaintiff's petitions is not based upon an express contract. The allegations to the effect that there was an express "agreement and understanding" between plaintiff and the officers of the bank concerning the conveyance of the land was a mere narrative of the facts attending the transaction and was no part of the cause of action. The fact that the pleader stated the circumstances which caused him to make the advancement does not affect the nature of the action. The petition stated a cause of action for money had and received. The proof sustained the allegations and it was therefore proper to submit the case to the jury.

The defendants contend the court erred in refusing their requested instruction B. This instruction would have told the jury that plaintiff was not entitled to the verdict unless he had proved by a preponderance of the evidence that there was an express agreement between plaintiff, his associates and officers of the bank, entered into in June, 1927, by the terms of which the bank agreed to reimburse plaintiff and his associates for any loss he sustained in advancing $11,700. The court correctly refused the instruction for the reasons stated in our discussion of the demurrer to the evidence. Defendants' criticism of plaintiff's instruction No. 1 is based upon the same theory advanced by them in support of their claim of error in the refusal of their instruction B. Plaintiff's instruction 1 followed the petition. The petition was sufficient, its allegations were supported by the evidence, from which it follows that the instruction was proper.

The defendants argue that the recitals in the declaration of trust and the statements in the letter of the bank's president, written in 1933, show that plaintiff and his associates were not acting for and on behalf of the bank. The declaration of trust was not signed by the bank. Hence, the recitals in the instrument were not conclusive on the plaintiff nor was the plaintiff precluded by the statements in the

letter. It may be that the oral evidence was in conflict with the statements in the letter and in conflict with the recitals in the declaration of trust. Be that as it may, the conflict, if any, was for the consideration of the jury and by its verdict we are bound.

The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.