W. J. Asher v. West End Bank, a Corporation, O. H. Moberly, Commissioner of Finance of the State, in Charge of the Liquidation of the West End Bank, and Creighton B. Calfee, Special Deputy Finance Commissioner in Charge of the Liquidation of the West End Bank, and C. O. Alexander, Appellants. No. 35547.

Harry W. Castlen v. West End Bank, a Corporation, O. H. Moberly, Commissioner of Finance of the State, in Charge of the Liquidation of the West End Bank, and Creighton B. Calfee, Special Deputy Finance Commissioner in Charge of the Liquidation of the West End Bank, Appellants. No. 35550.—131 S. W. (2d) 549.

Division Two, September 12, 1939.*

*Williams, Nelson & English* and *R. F. O'Bryen* for appellants.

---

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing, and motion to transfer to Court en Banc filed; motions overruled at September Term, September 12, 1939.

90

*Rassieur, Long & Yowitz* for respondents.

WESTHUES, C.—These two cases involve the same issues and a decision in one will dispose of the other. We will discuss the Asher suit. Asher, as plaintiff, filed a bill in equity against appellants, defendants below, wherein he sought to have a claim allowed in the sum of $11,083.33 against the assets of the defunct West End Bank, located in St. Louis County, Missouri. Plaintiff also asked the court to enjoin the foreclosure of a deed of trust and to expunge the same from the record. The defendants named were: West End Bank; O. H. Moberly, Commissioner of Finance; Creighton B. Calfee, Special Deputy in charge of the affairs of said bank; and C. O. Alexander, sheriff of Phelps County. The trial court entered a judgment for the defendants. Plaintiff filed his motion for a new trial, which the court sustained, and thereupon a decree for plaintiff was entered. The defendants then duly perfected an appeal to this court.

The material facts were conceded. In May, 1931, the State Banking Department found a shrinkage in the bond account of the bank in the amount of $50,000, which resulted in an impairment of the financial condition of the bank. The board of directors jointly agreed that they would place $50,000 in the bank to take up the shrinkage. Plaintiff Asher in this case and plaintiff Harry W. Castlen, plaintiff in case number 35550, were members of the board of directors. The $50,000 were placed in the bank under the following agreement:

" 'July 2, 1931.

" 'The West End Bank of University City, Missouri, this the 2nd day of July, 1931, has received the sum of Fifty Thousand ($50,000.00) Dollars from the following individual directors in amounts as follows, to-wit: J. C. Figge $8,000.00; Harry W. Castlen $8,750.00; Robert Smith $8,750.00; R. C. Frampton $8,750.00; N. B. Baker, $7,000.00;

W. J. Asher $8,750.00 and said amount has been deposited on said date with said West End Bank. It is understood and agreed between said Directors named and said West End Bank, that this said sum of Fifty Thousand ($50,000.00) Dollars has been so deposited by above Directors for the purpose of taking up shrinkage in Bond Account of said Bank caused by present market conditions of bonds and is to be placed and kept by said West End Bank in a 'Special Bond Account' to be then held until the Regular Reserve Bond Account has been increased to a sufficient amount to make up said shrinkage so that there is no impairment of capital of said Bank. At the time when said such shrinkage is made up and restored it is understood and agreed by said Bank and Directors, that said $50,000 is to be withdrawn by said Directors, their heirs, assigns or legal representatives in accordance with the sums advanced by each of them.

" 'A copy of any assignment of the respective interests from Director must be served on said Bank within ten days after date of assignment to hold said Bank to notice.

" 'It is also understood and agreed that a copy of this instrument signed by said Bank shall be given each Director named herein and this agreement spread on the minutes of the meeting of the Board of Directors of said Bank and made a part thereof.

" 'This agreement is to be submitted to the State Finance Commissioner for his consideration and approval and it is further understood and agreed that no withdrawals will be made from this Special Bond Account by said Directors, their heirs, assigns or legal representatives until such withdrawals are first submitted and approved by the Commissioner of Finance of the State of Missouri.' "

N. B. Baker, mentioned in the contract, failed to deposit his share of $7,000 and the other members of the board assumed that burden. Plaintiff's share of this amount was $2,333.33. The bank remained open until March 20, 1935, on which date it was closed by order of the board of directors and its assets placed in the hands of the State Finance Department for liquidation. After the $50,000 were placed in the bank a statement of the bank's financial condition was published in a newspaper and the $50,000 were included among the assets of the bank. It was conceded that after the deposit of the $50,000 the bond account at no time increased to a sufficient amount to make up the shrinkage or to justify a withdrawal of any portion of the $50,000 which had been deposited. It was also conceded that the finance commissioner at no time approved any withdrawals. In fact there was no occasion for him to do so because not a member of the board asked for any withdrawals from the fund prior to the closing of the bank. It was also conceded that the general creditors of the bank would not be paid in full.

Plaintiff stated in his petition that he was indebted to the bank in the sum of $9,215.04. A portion of this indebtedness was secured by

a deed of trust on land located in Phelps county, Missouri. Hence, the sheriff of that county was made a party defendant on the theory that he would act as trustee in a sale of the property. After the bank closed plaintiff sought to have his alleged claim of $11,083.33, which represented his share of the $50,000 above mentioned, allowed against the assets of the bank. The claim was denied by the finance department and this suit followed. Plaintiff asked that his claim be allowed as an offset against the amount of his indebtedness to the bank and that the balance of $1,868.29 be allowed as a preferred claim.

Respondent contends that when the $50,000 were delivered to the bank the directors thereby became depositors and therefore entitled to have the amount of the deposit allowed as an offset against any indebtedness they owed the bank. It is asserted that when the bank voluntarily delivered its assets to the State Finance Department it thereby breached its agreement and rendered impossible its performance of the contract to repay the money, when and if the bond account justified the withdrawal of the fund.

A reading of the above statement immediately suggests to a court of justice that plaintiff ought not to prevail. The board of directors placed this money in the bank to keep it open and thus induced people to make further deposits. It was this same board of directors that ordered the bank closed, yet plaintiff, a member of the board, claims that by that action it made performance impossible on the part of the bank and therefore its members should reap a benefit in the sum of $50,000. Plaintiff in this case concedes that had the bank not closed he would not have been entitled to withdraw his portion of the $50,000 unless and until the bond account of the bank had been rehabilitated with the withdrawal approved by the State Banking Commissioner. Had these directors signed notes for the $50,000 and placed them in the bank in lieu of the cash, for the purpose of taking up the shrinkage in the bond account, they would have been liable on the notes in case of liquidation. Cases of this nature are numerous. [See annotations in 95 A. L. R., pages 534 to 545.] The rule of law is the same if cash, and not notes, is placed in the bank. The cash was there for the very purpose of strengthening the bank's financial condition so that it would be permitted to continue in business. The transaction would have been useless if the directors who furnished the money had been permitted to withdraw the fund in case it were needed to meet the bank's obligations. This indeed would have been a fraud. The Massachusetts court, in Prudential Trust Co. v. Moore, 245 Mass. 311, 316, 139 N. E. 645, had the following to say apropos to the present situation:

"They knew that these new assets would enable the bank to continue doing business, retain deposits of existing customers, and presumably obtain new deposits and credits. To permit the defendants, who by these notes enabled the bank to appear to the public as a solvent concern, now to plead the invalidity of the very securities by which

they induced others to make and leave deposits with the bank, would be unjust and fraudulent.''

In the case of Coast Nat. Bank v. Bloom (N. J.), 174 Atl. 576, 95 A. L. R. 528, Bloom was sued on a note given to the bank for the purpose of making good a shrinkage in the bond account. In that case Bloom was to be reimbursed in case the bond account was re-established to its book value. The court in answering the defend-ant's contention, that the closing of the bank rendered performance impossible and therefore immediately matured the obligation to cancel the note, said:

''The argument seems to be that a reasonable time for appreciation of the securities must have elapsed before a cause of action on the note accrued, and that the receivership made it 'impossible for the bank to perform its promise' in this regard. But this was clearly not an implied condition of the contract. The parties did not contemplate that the bond account should remain frozen, awaiting the day of equality between the market and the book values. . . .

''Moreover, it was a contribution to the capital fund to avert a closing and receivership, and it likewise was not within the con-templation of the parties that, if and when the day of misfortune should come, liquidation would be deferred indefinitely awaiting an appreciation of the securities. It is evident that, in that situation, this fund was to be instantly available for the payment of the bank's obligations, in the liquidation process.''

So in this case the fund of $50,000 was deposited in the bank for the very purpose of giving security to the depositors of the bank. If the contract were construed as respondent contends it should be, it would be a fraud upon the creditors. It would be pretending, for the purpose of securing depositors, that the fund of $50,000 was an asset, when in fact it was not an asset. The law does not tolerate such conduct. [Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903; Markville State Bank v. Steinbring, 179 Minn. 246, 228 N. W. 757.] The directors, including Asher and Castlen, well knew that the sum of $50,000 was needed and was placed in the bank as an asset so it could continue in business. They knew it was not a deposit so as to create an obligation on the part of the bank, which could be enforced to the detriment of the general creditors of the bank. Note the following portion of a letter written the bank by the State Finance Commis-sioner:

'' 'My understanding is that your Board of Directors by Thursday, July 2, is to put up $50,000.00 to take care of a portion of the depre-ciation in your Bond Account, together with other losses they have developed or may develop in your bank. This will barely take care of the impairment of capital now shown.' ''

Mr. Caslen, plaintiff in case number 35550, testified as follows:

''We put it up, and knew it was in the Bank as part of the assets and helped take up depreciation of the bonds caused by the falling

market. We decided it was impractical to go to the stockholders for this money, as there was not time, and the directors had to put up this $50,000.00 or close the Bank, and we, as directors, felt we wanted to keep the Bank open.''

Respondent has not cited a case where the court permitted a party in his position to prevail. Cases are cited where courts allowed preferred claims against the assets of defunct banks because the claimants made special deposits creating the relation of trustee and cestui que trust. Samples of these cases are, Harrison v. Smith, 83 Mo. 210; Evans v. People's Bank, 6 S. W. (2d) 655. In the latter case the claimant deposited money in a bank for the specific purpose of investing it in government bonds. The bank accepted the money and agreed to so invest it for the claimant. The above cases are not in point in the present case. Respondent states that the case of Austin v. Hough (Mo. App.), 10 S. W. (2d) 655, supports his theory. We do not think so. Hough deposited $5000 with the bank commissioner of Texas, under the express condition that the money would be returned if a sufficient amount were not raised among the stock-holders of the bank to place it in a financial condition so as to permit it to open for business. The amount was not raised and the Springfield Court of Appeals held that Hough was entitled to have his $5000 returned to him. An entirely different situation from the case at bar.

Respondent also contends that appellants cannot rely upon an estoppel because it was not pleaded. This point was briefed by appellants. It is not necessary to discuss this question because respondent's petition, and the facts proven in support of the allegations therein, disclosed that plaintiff was not entitled to the relief sought.

It is therefore ordered that the judgment of the circuit court be reversed with directions to that court to dismiss plaintiff's petition. The same order to issue in case number 35550. *Cooley* and *Bohling*, CC., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.