JOHN D. TAYLOR v. FARMERS BANK OF CHARITON COUNTY, MISSOURI: R. WALDO HOLT, Commissioner of Finance; CHARLES A. JOHNSON, Deputy Commissioner of Finance, Appellants.—161 S. W. (2d) 243.

Division Two, March 13, 1942.

Rehearing Denied, May 5, 1942.

*Jerome Walsh, Louis E. Merrill, Lionel Davis* and *Roy W. Rucker* for appellants.

*J. A. Collet* and *John D. Taylor* for respondent.

LEEDY, J.—This is an appeal from an order sustaining plaintiff's motion for a new trial after verdict in favor of defendants in a suit filed by respondent, as plaintiff, on a claim against a failed bank whose assets and affairs are in charge of the Commissioner of Finance for liquidation. The parties will be referred to as they were styled in the trial court. The appeal was heard by the Kansas City Court of Appeals, where the action of the trial court was affirmed. [135 S. W. (2d) 1108.] One of the judges dissented, and, deeming the opinion to be in conflict with the decision of this court in Asher v. West End Bank, 345 Mo. 89, 131 S. W. (2d) 549, requested that the cause be certified to this court for final determination.

The order granting the new trial specified the ground therefor as "prejudicial error in the giving on behalf of defendants, Instruction No. Two." While not abandoning the issue made by their exception to the order granting the motion for new trial for the error specified, defendants, in their brief filed in this court, stress the proposition that the court should have directed a verdict for them (1) under the principle applied in the Asher case, supra; (2) because of the bar of the five-year statute of limitations; and (3) for the reason "plaintiff was not entitled to recover, upon either an express or implied contract because the whole transaction was void ab initio." The latter proposition is asserted for the first time in the brief filed here. Respondent insists there is no such question before us because never presented to the trial court either in the pleadings or by any instruction tendered.

The case was tried on a petition which the Court of Appeals, on the authority of Carter v. Farmers Bank of Chariton County et al., 232 Mo. App. 705, 108 S. W. (2d) 152, a companion case, held to state a cause of action for money had and received. The answer, after certain formal admissions, denied generally the allegations of the petition, set up the bar of the five-year statute of limitations, and pleaded estoppel. Trial was had on the theory that a general denial had been filed.

Plaintiff was a member of the Board of Directors of the bank from 1910 until 1934, except during 1914-16. He became president of the institution in 1919 and continued to serve in that capacity until 1934. He was also attorney for the bank. For a long time prior to June, 1927, one John Welch had been indebted to the bank, evidenced by a note or notes, secured by a deed of trust on 435 acres of farm land in Chariton County, signed by Welch and his daughter, Edith Clavin, each of whom owned an undivided one-half interest therein. The loan had been criticized by the Finance Commissioner, and it was the subject of concern on the part of the board ''from the early twenties —along about 1921 or 1922.'' In June, 1927, the amount of said indebtedness was $22,134.70, and it was determined by the bank that the land was not worth the amount of the indebtedness. The record is silent as to the condition of the bank at that time, but, in any event, Welch was called in and told the bank could no longer permit him to have and manage the land, and he was given the choice between foreclosure and conveying voluntarily, and he elected to do the latter. As a part of that arrangement the daughter deeded her interest in the land to Welch, and directors Taylor, Zillman, Carter and Brandt each paid to the bank the sum of $2,927.50, or a total of $11,710.00 which, with other bank funds, was used to reduce the Welch indebtedness to the sum of $10,000.00, for which latter sum, Welch executed a note, payable to the bank, and secured the same by a new deed of trust on said land, and the old notes were cancelled and surrendered to Welch. Welch on the same day, June 25, 1927, deeded the land, subject to the above encumbrance, to the aforesaid E. A. Carter, who contemporaneously therewith, executed a declaration of trust wherein ▉▉▉ it was recited that he had that day received a deed to the land and ''That while the record title to said land is vested in me absolutely, I hereby declare that I hold said title for myself, A. W. Zillman, Henry Brandt and John D. Taylor; that we jointly own the same in equal shares and I agree to convey said land at any time that the said parties or any two of them may direct me. I further declare that I have this day executed and delivered to the Cashier of the Farmers Bank of Chariton County my deed in blank conveying said land and I authorize the Cashier of said bank at any time to insert the name of any one of the above named persons, or of any person that they, the above named persons, may direct, and deliver the said deed upon the terms

and conditions to be designated by the said Zillman, Brandt and Taylor and myself, if living.'' As part of the same transaction Brandt leased the land to Welch under a written contract for one year. The bank immediately opened a special account known as ''Suspense Account 'C' for John Welch land,'' in which all income from the Welch land was deposited and from which all expenses were paid. The first items recorded in said account are those representing the payment of the sums above mentioned by plaintiff and his associates. Some 40 acres of the land were sold and the bank received the entire proceeds thereof. Neither plaintiff nor any of his associates ever received anything from this account nor from the Welch land nor the income therefrom. The bank continued to carry the account, and title to the land remained unchanged, when the bank closed its doors December 5, 1935.

Plaintiff testified that the arrangement between the directors who advanced the $11,710.00 and the other officers of the bank was that Carter was to manage the land and pay the proceeds into the bank. The proceeds were to be used in paying taxes, interest on the $10,000.00 loan and the operation of the farm; that the farm was to be sold at the earliest possible moment it was thought proper to do so, and if it brought in excess of $10,000.00, the bank's note of $10,000.00 was to be paid ''and the balance of the proceeds was to be used to pay us off as far as they would go, and after that the bank was to pay us.'' Zillman, Brandt and Carter testified in substance to the same effect— that they were to be reimbursed by the bank.

The reason that plaintiff and his associates advanced money and reduced the Welch loan as aforesaid was because Welch had no assets other than the land, and the banking department, as well as the board of directors of defendant, considered the loan excessive. In addition to the above mentioned indebtedness of Welch, he also owed other mortgages, which were liens against the land and had priority over defendant's mortgage. These other indebtednesses aggregating some $4,400.00, were, at about the time of the above transaction, paid off and discharged out of the undivided profits account of the bank.

Plaintiff further testified that in 1927 the market value of the farm ''would not have exceeded $15,000.00.'' Other testimony on his part tended to show that since that time the land had not been worth as much as $10,000.00. On August 18, 1931, following a demand by Carter and Brandt for reimbursement, and discussions extending over a period of several months concerning the matter, the following paper-writing was signed by Taylor, Brandt, Carter, Zillman, and also by H. C. Miller and A. F. Taylor, the latter occupying, respectively, the positions of cashier and assistant-cashier:

''WHEREAS, on and prior to the first day of July, 1927, John Welch owed an indebtedness to the Farmers Bank of Chariton County, aggregating $22,134.70, secured by a deed of trust on said land, and

"WHEREAS, the said John Welch was unable to pay said debt, on the 25th day of June, 1927, E. A. Carter, A. W. Zillman, C. H. Brandt, and Jno. D. Taylor agreed to take title to said land, the record title to be vested in E. A. Carter, and to pay to the said bank the sum of $2,927.50, totaling $11,710.00, it being understood at the time that the said payment by the aforesaid parties was made for the accommodation of said bank. At the time of said payment, the aforesaid bank held, and still holds a first deed of trust against said land in the amount of $10,000.00. It was understood and agreed between the said parties and the board of directors of said bank at the time the aforesaid parties made such payment that if they were unable to dispose of said land for a sufficient sum to pay the $10,000.00 first deed of trust due said bank, and to fully reimburse them for the sum of $11,710.00, that the aforesaid persons were to be reimbursed out of the money belonging to said bank,

"NOW, THEREFORE, for the protection of the aforesaid E. A. Carter, A. W. Zillman, C. H. Brandt, and Jno. D. Taylor, we, the undersigned, constituting the owners and holders of a majority of the stock of the Farmers Bank of Chariton County, Missouri, hereby agree that when said land shall be disposed of, if the aforesaid parties shall suffer any loss because of the payment aforesaid, and the then board of directors of the Farmers Bank of Chariton County shall fail, or refuse to reimburse the said persons for their said loss, that the matter shall be submitted to the stockholders of the said bank for their action at a stockholders' meeting, and we jointly, and severally, pledge ourselves that we will cast our votes according to our stock in said bank in favor of reimbursing the said parties for any loss that they shall sustain.

"WITNESS our hands this 18th day of August, 1931."

It was admitted that no record of any of the above transactions was ever made on the books of the bank. The sum sued for in this action was not listed on any of the books of the bank as an obligation of the bank, nor was it reflected as an obligation in any financial statements made and published by the bank from time to time pursuant to law and regulations of the Finance Department. In a letter written to plaintiff by the Commissioner of Finance, dated April 19, 1933, it was stated that "The loan of John Welch is in reality 'other real estate,' and it should be set up on your books under the proper account." In reply to that letter plaintiff, Brandt, Carter, Zillman and the cashier and assistant-cashier, Miller and A. F. Taylor, wrote a joint letter explaining the Welch loan as follows:

"John Welch Loan: Some years ago, this tract of land 435 acres, was held, one-half interest in John Welch, and one-half interest in his daughter. This loan ran up in the neighborhood of $20,000.00. At that time, it was decided by the board that this loan would have to be reduced to the $10,000.00 basis. Four members of the board put up

a sufficient amount of money and paid all but $10,000.00 of this loan. The land, subject to the $10,000.00 loan, was deeded to Mr. E. A. Carter. At that time, Mr. Carter executed a deed in blank, together with a declaration of trust, in which he declared that he held the title for the benefit of himself and the three members of the board associated with him; that, at any time it was desired, or could be done, the land would be sold, the bank debt paid, and the balance of the sale price distributed, in equal shares, to the four members of the board paying this sum of money. This property has not been deeded to the bank, but is still held under the terms of the declaration of trust. The farm is managed by Mr. Carter, and the proceeds applied to the taxes and interest. . . ."

In view of the facts with respect to the directors, including plaintiff, making reports of the condition of the bank to the Finance Commissioner and publishing the same, and posting a copy thereof in the bank, as required by law, and the item in question not being included among the liabilities, we cannot assent to the holding of the Court of Appeals that the defense of estoppel would not, in any event, be available. This holding was upon the theory that the commissioner can make only such defenses as the bank, if it were a going concern, could make; and the bank, if a going concern, could not interpose the defense of estoppel because there were no false representations made to the bank, and both parties were fully informed as to every material fact surrounding the entire transaction. The Finance Commissioner in charge of a bank for liquidation represents not only the bank, but he also represents the stockholders, depositors, and other creditors. [9 C. J. S., Banks & Banking, Sec. 430.] We think the applicable rule is stated in Leary v. Capitol Trust Co., 238 App. Div. 661, 265 N. Y. S. 856 [aff'd in 189 N. E. 735], where it was said, "Balance sheets taken from the books of a bank are published for the information of depositors. These statements, made under the direction of the directors, may be relied on by the depositors, and directors are estopped from satisfying undisclosed liabilities to themselves from funds which, otherwise, would be applied to the payment of depositors." See, also, Asher v. West End Bank, supra; Todd v. Davidson, 19 N. E. (2d) 236; Shaw v. McShane, 50 S. W. (2d) 278.

The reasoning of the Asher case, supra, is that to permit recovery upon the facts there in judgment would be a fraud upon the depositors and other creditors of the bank. But it will be observed that in that case it was expressly admitted that the assets of the bank in liquidation were insufficient to satisfy the claims of the general creditors. If such fact appeared in this case, we would have no hesitancy in holding that the demurrer should have been sustained; but it does not so appear, nor may we assume its existence. As whatever claim plaintiff may have is inferior and subordinate to those of the deposi-

tors and other creditors, the Asher case is not controlling. On the question of whether plaintiff may recover at all, it is sufficient to say that his testimony negatives the theory of a voluntary contribution or gift. There is nothing in the record to indicate the condition of the bank at the time the directors put up the money in question, nor that the reduction of the Welch loan was a condition imposed by the banking department upon which the bank would be permitted to continue in business. And so, in this situation, as between plaintiff, on the one hand, and the bank and its stockholders, on the other, we are not prepared to hold that, under the facts most favorable to plaintiff, it conclusively appears that there is no liability on the part of the bank to repay the sum in suit.

We think the question as to whether this action is barred by limitations must be answered in the negative; and this is true whether the rule suggested in the dissenting opinion or that applied by the majority opinion of the Court of Appeals be deemed controlling. A period of 9 years elapsed between the time the money was furnished (and the debt accrued) and the date of the filing of this suit, those dates being, respectively, June 25, 1927 and July 9, 1936. The majority opinion of the Court of Appeals held the action not barred because as the money was to be repaid when the land was sold, and that event had not happened, and no demand ever having been made for payment, and although the debt accrued when the money was paid, the right to sue did not accrue until the right to demand payment arose. The dissenting opinion does not hold that the action is barred, but expresses the view that the applicable rule, not considered by the majority opinion, is that "if the money was due at some time in the future, unspecified either by specific date or by the happening of some specific event, then it must be presumed that some *reasonable time* was intended after the expiration of which the statute would begin to run." It was the further view of the writer of that opinion that the question of the bar of the statute is to be resolved "by first determining whether or not a period of slightly more than four years is beyond the reasonable time within which the right to demand payment would arise under the circumstances in this case" (treating, of course, the transaction of August 18, 1931, as a demand). Under the circumstances of this record, when considered in the light of the depressed condition of real estate and the lack of stability in the banking situation, with particular reference to banks in agricultural communities of the state at the time in question, we would not be inclined to hold that a demand for payment made slightly more than four years after the money was advanced was beyond the expiration of a reasonable time.

Defendants' instruction No. 2, the giving of which was specified as the error for which the new trial was granted, directed a verdict for defendants upon facts summarized by the Court of Ap-

peals as follows: "That plaintiff and his associates paid to the bank the sum of $11,710; that the bank at the same time accepted the note of John Welch for $10,000, secured by a deed of trust, and surrendered to John Welch the $21,700 note; and that thereupon Welch conveyed the land to Carter for the benefit of plaintiff and his associates, subject to the $10,000 deed of trust debt." Substantially every fact upon which a finding for defendants was directed by the instruction was pleaded by plaintiff and was proved by him in making his case. The Court of Appeals condemned the instruction as omitting reference to the very facts upon which plaintiff relied for recovery, i. e., that he and his associates were to be reimbursed by the bank, which was the main controverted fact in the case. We do not regard the instruction as merely the converse of plaintiff's main instruction. It is, undoubtedly, subject to the construction that, upon a finding of the facts hypothesized, the jury was required to find for the defendants irrespective of the fact that they may have also believed from the evidence that plaintiff was to be reimbursed by the bank. Moreover, where error is committed, this court will presume that the trial court, with its better knowledge of the trial and the effect the error may have had on the result, acted correctly in sustaining a motion for new trial, although the error pointed out may not have been sufficient to reverse the judgment. [Thompson v. St. Joseph Ry. Light, Heat and Power Co., 345 Mo. 31, 131 S. W. (2d) 574.]

The order granting the new trial is affirmed and cause remanded. All concur.