C. H. BRANDT, Appellant, v. FARMERS BANK OF CHARITON COUNTY et al.—No. 39006.—182 S. W. (2d) 281.

Division One, September 5, 1944.

260

*W. H. Meschede* and *J. A. Collet* for appellant.

*Fred Bellemere* and *Roy W. Rucker* for respondents.

DALTON, C.—This is an appeal from an order granting a new trial to defendants after a verdict for plaintiff in the sum of $2927.50. The action was instituted pursuant to what is now Sec. 7932, R. S. 1939, to establish a rejected claim in the sum of $4410.72 against the assets of the Farmers Bank of Chariton County. The bank was and is in charge of and being liquidated by the Commissioner of Finance. Plaintiff was a director of the bank and his claim is based upon the alleged advancement of $2927.50 by him to the bank on June 25, 1927. Plaintiff's appeal was duly taken to the Kansas City Court of Appeals, where the order granting the new trial was set aside and the cause remanded with directions to the trial court to reinstate the verdict and enter judgment thereon. Brandt v. Farmers Bank of Chariton County (Mo. App.), 177 S. W. (2d) 667. However, the Kansas City Court of Appeals deemed its decision in conflict with that of the St. Louis Court of Appeals in Sternkopt v. Cawein (Mo. App.), 63 S. W. (2d) 443 and directed that the cause be transferred to this court. We "must rehear and determine said cause . . . as in case of jurisdiction obtained by ordinary appellate process." Sec. 6, Amendment of 1884 to Art. VI. Constitution of Missouri; Block v. United States Fidelity & Guaranty Co., 316 Mo. 278, 292, 290 S. W. 429.

The evidence in support of plaintiff's claim is quite similar to the evidence in support of the claims of other directors for funds advanced by them at the same time to the same bank. Carter v. Farmers Bank of Chariton County, 232 Mo. App. 705, 108 S. W. (2d) 152; Taylor v. Farmers Bank of Chariton County (Mo. App.), 135 S. W. (2d) 1108; Taylor v. Farmers Bank of Chariton County, 349 Mo. 407, 161 S. W. (2d) 243. In June 1927, John Welch was indebted to the Farmers Bank of Chariton County to the extent of approximately $22,000. The indebtedness was secured by a deed of trust on 435 acres of real estate of the reasonable cash value of twenty to twenty-five dollars per acre. Welch "was entirely broke" and unable to reduce the indebtedness. His daughter Edith Clavin owned a one-half interest in the land, subject to the indebtedness. The State Finance Commissioner repeatedly and constantly criticized the loan and recommended that it be collected. On June 27, 1927, Edith

Clavin quitclaimed her interest in the real estate to her father. He refinanced a part of the loan by executing a new deed of trust to the bank to secure a note for $10,000 and then quitclaimed his interest in the real estate to E. A. Carter, a director of the bank. On the same date, Carter, plaintiff and two other directors of the bank, at the request of the president and cashier, advanced and paid to the bank $2927.50 each to cover the balance of the Welch loan. The parties advancing the money were advised that the bank needed that much money to carry it over and fix up the Welch loan and they were assured that "the bank would see that they got their money back." Carter (as grantee in the quitclaim deed) then executed a declaration of trust in favor of the parties advancing the money. The declaration of trust described the real estate and then recited: "That while the record title to said land is vested in me absolutely, I hereby declare that I hold said title for myself, A. W. Zillman, Henry Brandt and John D. Taylor; that we jointly own the same in equal shares and I agree to convey said land at any time that the said parties or any two of them may direct me. I further declare that I have this day executed and delivered to the cashier of the Farmers Bank of Chariton County my deed in blank conveying said land and I authorize the cashier of said bank at any time to insert the name of any one of the above named persons, or of any person that they, the above named persons, may direct, and to deliver the said deed upon the terms and conditions to be designated by the said Zillman, Brandt and Taylor and myself, if living." The deed mentioned was deposited with the bank.

In August 1931, the plaintiff and the others, who had advanced the funds to reduce the Welch loan, requested a settlement with the bank, but the bank was not in financial condition to settle at that time and an instrument in writing was executed on August 18, 1931 and signed by them and two other directors, as follows: "Whereas, on and prior to the first day of July 1927, John Welch owed indebtedness to the Farmers Bank of Chariton County, aggregating $22,134.70, secured by a deed of trust on said land, and whereas, the said John Welch was unable to pay said debt, on the 25th day of June 1927, E. A. Carter, A. W. Zillman, C. H. Brandt, and Jno. D. Taylor agreed to take title to said land, the record title to be vested in E. A. Carter, and to pay to the said bank the sum of $2,927.50, totaling $11,710.00, it being understood at the time that the said payment by the aforesaid parties was made for the accommodation of said bank. At the time of said payment, the aforesaid bank held, and still holds a first deed of trust against said land in the amount of $10,000.00. It was understood and agreed between the said parties and the board of directors of said bank at the time the aforesaid parties made such payment that if they were unable to dispose of said land for a sufficient sum to pay the $10,000.00 first deed of trust due said bank, and to fully re-

imburse them for the sum of $11,710.00, that the aforesaid persons were to be reimbursed out of the money belonging to said bank.

"Now, therefore, for the protection of the aforesaid E. A. Carter, A. W. Zillman, C. H. Brandt and Jno. D. Taylor, we, the undersigned, constituting the owners and holders of a majority of the stock of the Farmers Bank of Chariton County, Missouri, hereby agree that when said land shall be disposed of, if the aforesaid parties shall suffer any loss because of the payment aforesaid, and the then board of directors of the Farmers Bank of Chariton County shall fail, or refuse to reimburse the said persons for their said loss, that the matter shall be submitted to the stockholders of the said bank for their action at a stockholders' meeting, and we jointly, and severally, pledge ourselves that we will cast our votes according to our stock in said bank in favor of reimbursing the said parties for any loss that they shall sustain."

Subsequent to the date the funds were advanced to the bank, it was never possible to sell the real estate for an amount sufficient to pay the indebtedness evidenced by the $10,000 Welch note and deed of trust. However, the financial statements issued by the bank subsequent to the date of the Welch note made no reference to the sums advanced by Carter, Taylor, Zillman and plaintiff, as being obligations of the bank. Many of these statements were signed and sworn to by plaintiff. There was further no reference to the advancement of said funds in any minute book or record book of the bank. Plaintiff admitted that he knew that the purpose of the financial statements was to show the actual condition of the bank and the amount of assets and liabilities.

While it is conceded that "the increase in the amount of the (Welch) debt and the depreciation of the value of the security held by the bank made it necessary to reduce this debt to an amount not in excess of $10,000 in order to make it an acceptable loan, either to the bank or to the State Finance Department," the financial report of the bank of January 5, 1928, showed the Welch loan as $10,000 and the estimated value of the property as $30,000. The report of January 6, 1930, estimated the value of the Welch land at $26,000 and the report of February 3, 1932 fixed its value at $21,000.

On April 19, 1933, the Commissioner of Finance advised the bank that, "the loan of John Welch should be set up on the books under the proper account of other real estate." On May 10, 1933, plaintiff and other officers and directors signed a letter in reply, explaining the Welch matter. While the abstract of the record shows that this letter was read to the jury, it is not set out in the record, but respondents have quoted it fully in their brief as supporting one of their affirmative defenses. In any case, the Commissioner of Finance took no adverse action and the said bank remained open for business, until December 5, 1935. On that date, "the defendant bank closed

its doors for business and the said bank and the affairs of said bank" were taken over by the Commissioner of Finance and he and his deputies have since been in charge as liquidating officers. The record further shows that during the course of the liquidation $85,000 has been distributed to creditors, but that the bank will not be able to pay its depositors in full. The matter of the "Welch note transaction" was fully considered by the Commissioner of Finance and federal officers "before the bank became a member of the F. D. I. C." and insurance of deposits was granted in January 1934.

At the close of all the evidence, each of the defendants tendered a demurrer to the evidence, which was refused, and, after verdict and judgment went for plaintiff, defendants filed a motion for a new trial complaining of the court's refusal to give said demurrers and of other alleged errors. Before the motion for a new trial was ruled, the circuit judge before whom the cause was tried was succeeded by another circuit judge, who had been of counsel in the cause. He disqualified himself and the parties agreed upon a special judge to hear and determine the motion for a new trial. Pending a ruling on the motion for a new trial, the special judge permitted defendants to file with the court the ex parte affidavit of the special deputy finance commissioner in charge of the assets and affairs of the Farmers Bank of Chariton County. The affidavit indicated that a 40% dividend had been paid to general creditors and that such creditors would not receive more than 25% additional in dividends. The special judge thereupon sustained the motion for a new trial, but assigned no reason in the record for his action. However, he wrote an opinion, not made a part of the record, wherein he indicated that the parties had submitted the motion to him on oral argument, written briefs and a transcript of the evidence, but without furnishing a copy of the petition, answer or reply, a copy of the instructions given or refused or even a copy of the motion for new trial. He did not inspect the files in the case, but ruled the motion on the theory that plaintiff was estopped from asserting his claim, and held that "upon the record, under the authorities to allow a recovery would be a fraud upon the depositors and creditors."

Appellant assigns error on the granting of the new trial and on the court's alleged holding "that the issue of insolvency of the Farmers Bank at the time it closed its doors was an issue in the case at the time of the trial." Appellant contends that the motion was ruled "upon grounds not involved in or presented by the record in this case"; and that "it is now undertaken to broaden, enlarge and entirely change the issue of estoppel as presented in defendants' answer." Respondents, in addition to other matters, insist that the court properly sustained their motion for a new trial for the reason that it erred in refusing to give their instructions in the nature of

separate demurrers to the evidence and in the giving and refusal of instructions.

We consider first appellant's theory that the new trial was granted upon a theory of estoppel which was not an issue in the case. By their answer, respondents (defendants) made certain admission, denied generally the other allegations of the petition and attempted to set up three affirmative defenses as follows: (1) that plaintiff's money was advanced as an investment in the land and not as an accommodation to the bank; (2) that plaintiff's claim was barred by the statute of limitations; and (3) that plaintiff was estopped to assert his claim. The last defense was pleaded as follows: ''For their further answer and by way of affirmative defense, defendants say that at all times mentioned in said petition this plaintiff was a director and an officer of said Farmers Bank of Chariton County and that from 1927 to the date of the closing of said bank, December 5, 1935, plaintiff and his associates, who were also directors of said bank, made frequent reports to the Commissioner of Finance of the State of Missouri and in said reports did not list or show any indebtedness to this plaintiff on account of the matters alleged in the petition herein, but on the contrary by the said reports represented to said Commissioner that there were no debts, obligations or liabilities outstanding against said bank other than those shown on the reports and the books of said bank, and these defendants alleged that no such debt as is now claimed by the plaintiff herein appeared either on the reports aforesaid or the books of said bank.

''These defendants further allege that in the month of May, 1933, in answer to an express and specific inquiry by the Commissioner of Finance, and addressed to John D. Taylor, as president of the Farmers Bank of Chariton County, this plaintiff, together with his associates and the other officers and directors of said bank expressly stated and represented to said Commissioner of Finance, in writing, that said bank had no liabilities on account of the John Welch transaction and that the bank's only interest therein was that it held a secured note in the amount of $10,000.

''These defendants further allege that the Commissioner of Finance, in his official capacity and as the representative of the depositors and creditors of said Farmers Bank of Chariton County, relied upon the said representations of this plaintiff . . .

''Defendants further state that to permit plaintiff to recover under the facts herein, would be unjust and inequitable to the depositors in and creditors of said bank and that by reason of his representations to the Commissioner of Finance as hereinabove set forth, plaintiff is estopped from claiming that any liability on the part of said bank to plaintiff for money received by said bank arose out of or on account of the said Welch transaction as hereinabove set forth.''

While the above plea was sufficient to generally advise plaintiff that defendants intended to make the defense that plaintiff, under the facts alleged, was estopped to claim liability against the bank for the funds advanced, it will be noted that defendants did not expressly allege facts tending to show why it would be "unjust and inequitable to the depositors and creditors" to permit the allowance of plaintiff's claim, nor did defendants allege that the assets of the bank were insufficient to satisfy the claims of the general creditors and depositors and that any allowance of plaintiff's claim would damage the depositors and creditors by decreasing dividends payable to them. In other words, defendants did not plead facts tending to show how injury and damage would result to creditors and depositors, unless the estoppel attempted to be pleaded was sustained, and the plea was defective in the particular noted. Without objection, however, defendants showed by plaintiff's first witness that depositors and creditors would not be paid in full and the inference could be drawn from this evidence that any allowance of plaintiff's claim would damage the depositors and creditors of the bank.

Appellant contends that the issue of estoppel could not arise by the admission of evidence without objection; that "an issue is made by facts pleaded"; that a pleading "cannot be aided by the conclusions of the pleader"; and that "a judgment of the court must be responsive to the issues tendered by the pleadings." Many cases are cited in support of these well recognized general rules. Appellant further says that "to have permitted defendants to so amend their answer as to set up the defense (of estoppel) now contended for would have been the introduction of a new and additional defense not pleaded in their answer"; and that "under such circumstances the rule adopted by some courts that where a petition is defective, because of the omission of some necessary averment, the defect is waived, if evidence touching the omitted matter be received without objection, is without application here." Appellant further says that "the issue of estoppel shown by the defendants' answer was based entirely upon the representation made by the various financial statements filed, which did not include this (plaintiff's) claimed debt as an obligation owing by the bank"; and that there was no pleading that the bank was insolvent and unable to pay its depositors in full at the time it closed its doors.

It was the opinion of the Kansas City Court of Appeals (as contended for by appellant) that the answer did not plead sufficient facts to raise an issue concerning the insolvency of the bank. Brandt v. Farmers Bank of Chariton County, supra (177 S. W. (2d) 667, 670).

However, appellant, as plaintiff below, did not attack the alleged affirmative defense of estoppel in defendants' answer by motion, demurrer or otherwise, and interposed no objection to the introduction of evidence tending to show that, if the estoppel was not sustained,

the depositors and creditors would be injured, because the assets of the bank were insufficient to pay general creditors in full. In addition, at the close of the evidence, appellant offered and the court gave plaintiff's instruction No. 3 which recognized defendants' plea of estoppel, as a properly pleaded affirmative defense interposed in the case, and recognized that an issue of damage or injury was essential to sustain the estoppel pleaded. In this connection, we need not determine the correctness of plaintiff's instruction No. 3, but only that it did recognize the defense of estoppel as a well pleaded defense and that defendants' evidence of injury and damage was sufficient to make an issue of fact for the jury.

While it may be conceded that pleading and proof of damage, that is, that the party setting up the estoppel will sustain injury unless the plea of estoppel be sustained, is essential to make the issue of estoppel a valid defense; and that it is necessary to plead facts and not mere conclusions as to such damage, yet if no objection is interposed to the pleading of conclusions and if no objection is made to the introduction of evidence to show the essential element of damage, as by proof of insolvency in this case, so that the inference may be drawn that any payment to plaintiff will decrease payments to creditors, and if plaintiff by his own instructions in the trial recognizes both the defense of estoppel as a valid defense and damage (unless the pleaded estoppel be sustained) as an issue in the case, it is too late on appeal to contend that there was no such issue of estoppel and damage in the case. In view of all of the circumstances shown by the record, defendants' answer must now be considered to have been amended to conform to facts admitted in evidence without objection, and plaintiff is precluded from complaining that a valid plea of estoppel, including an issue of damage to depositors and creditors, if the estoppel be not sustained, was not presented. Ford v. Wabash Ry. Co., 318 Mo. 723, 300 S. W. (2d) 769, 774; Rock v. Keller, 312 Mo. 458, 278 S. W. 759, 765; Ehrlich v. Mittelberg, 299 Mo. 284, 252 S. W. 671, 676; Fuhler v. Gohman & Levine Construction Co., 346 Mo. 588, 142 S. W. (2d) 482; Harrison v. Slaton (Mo. Sup.), 49 S. W. (2d) 31, 35; North Nishnabotna Drainage District v. Morgan, 323 Mo. 1, 18 S. W. (2d) 438; Stewart v. Omaha Loan & Trust Co., 283 Mo. 364, 222 S. W. 808; Cornwell v. Highway Motor Freight Line, 348 Mo. 19, 152 S. W. (2d) 10, 15; Robinson v. Kansas City Public Service Co., 345 Mo. 764, 137 S. W. (2d) 548; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723, 726. The conclusion so reached does not conflict with the decisions of the court en banc relied upon by the Kansas City Court of Appeals (177 S. W. (2d) 667, 672), because in none of those cases had the plaintiff affirmatively recognized an affirmative defense pleaded, as being sufficient. It was further immaterial that there was no pleading or proof that the bank was insolvent when plaintiff's claim arose in June, 1927, or when

the bank closed its doors in December, 1935, since it is alleged that plaintiff's claim was not presented to the special deputy commissioner of finance for allowance until February, 1936, and whether or not the defense of estoppel would lie in favor of defendants at the time suit was brought on it depended upon facts then existing to support said defense, particularly as to whether the then allowance of said claim, in view of the facts as alleged, would work injury and damage to depositors and creditors, unless the estoppel contended for be sustained.

 Respondents contend that the new trial was properly granted because the demurrer to the evidence should have been sustained for the following reasons: (1) the petition declared upon an express contract and recovery was had upon an implied contract; (2) the action is barred by the five-year statute of limitations; (3) the whole transaction mentioned in plaintiff's petition was void ab initio, being a transaction between a director of a banking corporation and the banking corporation, where the self interest of the director was involved; and (4) it affirmatively appeared from the evidence that the common creditors would not be paid in full. There is no merit in the first two contentions, which were raised in the other case. Taylor v. Farmers Bank of Chariton County, supra (349 Mo. 407, 161 S. W. (2d) 243); Carter v. Farmers Bank of Chariton County, supra. The third ground was not raised by the pleadings in this case, nor urged at the trial. The cause was not defended upon any such theory and such defense may not now be considered here on appeal. Nulsen v. National Pigments & Chemical Co., 346 Mo. 1246, 145 S. W. (2d) 410, 414. The fourth ground urged, must also be overruled. While there was evidence that depositors and general creditors would not be paid in full and the inference could be drawn that, if plaintiff's claim was allowed, the dividends to depositors and general creditors would be reduced to their damage and injury, there was in fact no evidence that the assets of the bank (at the time plaintiff's claim was presented for allowance and suit was filed) were insufficient to pay depositors and general creditors in full and appellant does not now concede such fact. The mere evidence that some three years later, to wit on October 9, 1939, the assets of the bank were insufficient to pay depositors and creditors in full could not be said to establish such fact as a matter of law. The demurrer to the evidence was, therefore, properly overruled.

 Respondents further contend that the court erred in giving plaintiff's instructions 2 and 3 and in refusing to give defendants' instructions 3 and 4. It will only be necessary to consider the court's refusal to give defendants' instruction 3 as follows: "You are instructed that if you find and believe from the evidence that at all of the times mentioned in evidence, plaintiff was a director of the Farmers Bank of Chariton County, and as such director, along with

his associate directors, made reports to the Commissioner of Finance of Missouri, from time to time, after the 25th day of June, 1927, until December, 1935, with reference to the financial condition of said Farmers Bank of Chariton County, and if you further find that the claim which plaintiff now asserts against said Farmers Bank of Chariton County was not listed in said reports, or on any book or record of said Farmers Bank of Chariton County as a liability of said bank, and if you further find that to permit plaintiff to now recover on account of said asserted liability of said bank, the depositors or creditors of said bank would be adversely affected, or the amount of dividends paid to the creditors of said bank would be diminished by the allowance of such claim, then plaintiff is not entitled to recover and your verdict must be for the defendants.''

The only grounds urged against the giving of defendants' instruction 3 is (1) that the defense of estoppel, on the theory that ''the bank was insolvent and unable to pay its depositors in full at the time it closed its doors, was not an issue tendered by the pleadings''; and (2) that the instruction was properly refused, because ''defendants' plea of estoppel as presented in their answer'' and the issue of estoppel as presented in the instruction was ruled against defendants in the case of Taylor v. Farmers Bank of Chariton County (Mo. App.), 135 S. W. (2d) 1108; and Taylor v. Farmers Bank of Chariton Co., 349 Mo. 407, 161 S. W. (2d) 243. We have held that appellant tried the case below on the theory that estoppel was a defense and that there was evidence to make an issue of fact as to damage. The Taylor case, supra, is not decisive on the second point. It did not appear in that case that the assets of the bank in liquidation were insufficient to satisfy the claims of general creditors. In the opinion of this court, Taylor v. Farmers Bank of Chariton County, 349 Mo. 407, 161 S. W. (2d) 243, 246, the court said: ''If such fact appeared in this case, we would have no hesitancy in holding that the demurrer should have been sustained; but it does not so appear, nor may we assume its existence.''

We hold that the court committed prejudicial error when it refused defendants' ▮▮▮ instruction No. 3. Taylor v. Farmers Bank of Chariton County, supra, 349 Mo. 407, 161 S. W. (2d) 243, 246; Asher v. West End Bank, 345 Mo. 89, 131 S. W. (2d) 549. It will be unnecessary to consider other alleged errors. The order granting a new trial is affirmed. *Bradley, C.,* concurs; *Van Osdol, C.,* not sitting.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.