ROBERT LEE ELGIN v. KROGER GROCERY & BAKING COMPANY, a Corporation, and JOSEPH M. HOLTGRAVE, Defendants, KROGER GROCERY & BAKING COMPANY, a Corporation, Appellant.—No. 40233. —206 S. W. (2d) 501.

Division One, November 10, 1947.

Rehearing Denied, December 8, 1947.

20

*Wayne Ely* and *Robert C. Ely* for appellant.

*Edward O. Hancock* and *John T. Sluggett* for respondent.

22

[503] DALTON, C.—Action for damages for personal injuries alleged to have been sustained on account of the negligence of the defendants. The jury returned a verdict for plaintiff for $15,000 against defendant Kroger Grocery & Baking Company, but found for its employee Joseph M. Holtgrave. The trial court required a remittitur of $5,000, which was made, and judgment was entered against the Kroger Company for $10,000. It has appealed.

Respondent, a truck driver for the Pacific Inter-Mountain Express Company, sustained injuries to his left arm on June 18, 1945, while engaged in loading a semi-trailer at the loading platform of appellant's Chouteau and Spring Avenue bakery in St. Louis. Respondent backed his truck and semi-trailer into one of the stalls at the loading platform, so that the back of the semi-trailer was within a foot to eighteen inches of the edge of the platform and the floor of the semi-trailer was about the same distance below the platform level. A flat sheet of steel, referred to as a plate, about four feet square and one quarter of an inch thick, was placed as a bridge between the platform and the floor of the semi-trailer. Hand trucks, loaded with crackers and cookies, were then moved by appellant's employees from the platform into the semi-trailer, where they were unloaded by respondent and his helper.

It was alleged in the petition that appellant and its employee, Joseph M. Holtgrave, who was admitted to be "a shipping department employee in charge of and foreman of loading operations on and about the loading platform," caused the flat steel plate to be laid between the platform and the semi-trailer, "with the edge of the steel plate resting on the said platform extending upward about an inch," and that the "defendants, their agents, servants and employees carelessly and negligently failed and omitted to provide a proper steel plate, towit, a steel plate with one edge bent on an angle so that the said steel plate would lay flat on said loading platform when the opposite end was resting on the said lower semi-trailer."

It was further alleged that "defendants, their agents, servants and employees, did then and there so carelessly and negligently control, push, propel and manage a certain hand truck, float ,or skid, loaded with boxes of cookies, over said loading platform and toward the said semi-trailer, that it suddenly and violently struck the end of said steel plate which extended upward from the said loading platform as aforesaid and said steel plate was thereby caused to move off the loading platform and against and under the foot or feet of plaintiff; that the forward end of said loaded hand truck then and there dropped down upon the unsupported end of said steel plate thereby causing plaintiff to be violently thrown backward to and upon the floor of said semi-trailer and boxes dislodged from said hand truck to fall against and upon him." The petition further charged both defendants with specific negligence in the operation of the hand truck. The evidence in support of these charges was based entirely upon the conduct of defendant Holtgrave. The [504] charges were submitted to the jury by plaintiff's Instruction No. 1. In the event of a finding for plaintiff thereunder, the jury was directed to return a verdict against both defendants. Instruction 1-A, made a similar submission of the charges of negligent operation of the hand truck against both defendants based on Holtgrave's conduct, but included with such submission a submission of the charge of negligent failure to provide a steel plate with one edge bent on an angle. This charge of negligent failure to provide a proper plate was submitted against appellant alone and the jury was not limited to a consideration of Holtgrave as the employee who selected and laid the plate, nor was he excluded from consideration. The charge was submitted in the conjunctive with the charges of negligent operation of the hand truck by defendant Holtgrave. In the event of a finding thereunder for plaintiff, the instruction authorized a verdict against either one or both defendants. There is no contention that the instruction, on the facts submitted, should have required a finding against both defendants. Appellant assigns error on the giving of Instruction 1-A. The sole ground is that there is no evidence to support a finding that appellant "failed and omitted

to provide plaintiff with a plate with one edge bent on an angle.'' Appellant contends there is no evidence in the record ''to sustain a finding that a Kroger employee laid the plate,'' nor ''a finding that the Kroger Company was responsible for the kind of steel plate which was used.'' In view of a later assignment that, if a Kroger employee laid the plate it was defendant Holtgrave who was discharged by the verdict of the jury, we will determine whether there was any evidence in the record from which the jury could infer and find that a Kroger employee, other than defendant Holtgrave, selected and laid the plate in question.

There was no direct testimony that any particular individual selected and placed the plate. Appellant furnished two kinds of steel plates; flat plates, intended for use when the bed of the truck was level with the floor of the platform, and plates with one edge bent on an angle for use when the floor of the truck was below the level of the platform. Both types of plates were available for use in bridging the distance between the semi-trailer and the platform. After respondent backed into the loading platform, he went directly to appellant's office where he stayed for 15 to 20 minutes. His helper, Blagg, went for a drink. On the platform respondent met Holtgrave, foreman of loading operations, was told that there would be 7000 pounds of freight (crackers and cookies) for Wichita, Kansas. Before respondent left appellant's office, he saw Holtgrave pass, going towards respondent's truck, with a load of crackers. The crackers were on a float or skid, which was a ''flat board affair . . . about five feet long and four feet wide,'' with two wheels under one end and two legs under the other end. When loaded, the end with legs could be raised and placed upon a two wheel dolly and the load moved, as a hand truck, to the desired location. When respondent returned to the truck, the plate in question was in place between the semi-trailer and the platform, a float load of crackers was the semi-trailer and Holtgrave was coming out of the semi-trailer with the dolly, which could be detached after the float had been moved and placed. Respondent did not select or place the plate and neither did his helper, Blagg. Respondent did not see any one lay the plate and neither did Blagg. It was a flat plate belonging to appellant. Respondent had received other truck loads of freight from appellant's platform prior to the occasion in question. He had never laid a plate to pick up freight. On a previous occasion, he saw or knew that one of appellant's employees laid the plate. Respondent had been to this loading platform ten or twelve times before to pick up freight for the Viking Express Company and once before for the Pacific Inter-Mountain Express Company. Appellant's employees usually laid the plates. He said that if you were getting freight from the Kroger place into your truck, appellant's employees put down the plate, but if you were delivering

freight, you laid the plate yourself. Respondent further testified: Q. Was there a custom there regarding the putting of freight into a truck or taking out freight from a truck, if you know? A. "Well, when picking up freight there the Kroger men always put [505] the freight in the trailer." He further said: "The Kroger men bring the freight in; that is their job to put the proper plate there. . . . They placed plenty plates for me when I went down there." Blagg testified that he had been to appellant's loading platform on two other occasions and that a plate had been put to his truck on each occasion. Neither he nor the driver of the truck put down the plate on these occasions, but he didn't know who put the plates in place.

On behalf of both defendants, Holtgrave testified that he did not lay the plate; that it was in place when he delivered the first load; that he didn't know who put it in position; and that appellant's employees didn't lay plates for anybody. Holtgrave further testified: "Q. When these trucks come in there to take a load of cookies and crackers, Mr. Holtgrave, does the driver stack the load on the truck? A. Yes, sir. . . . Q. Where does he get the crackers and cookies from? A. Generally one of us takes them down and pushes them in on the skids. Q. As a matter of facts, you do that all the time, don't you? A. Yes, sir. . . . Q. . . . When there is freight from Kroger's outbound, then the Kroger employees put that freight into the trucks for the truck drivers . . . ? A. Yes. We put the loads in the trailer for them going out, but we do not accommodate them any other way. Q. But when freight comes in, you don't go in the truck and get it? A. No, they load it from the trucks, bring it out on the dock. Q. They load it on a skid or whatever they have got to pull it out on the dock? A. They pull it out on the dock. Q. And that is the custom at Kroger's, is it not? A. That is right. Q. Do you know why that is done? A. I have no idea why it is done, but that is our orders out there. Q. It is your orders to put outgoing freight in trucks? A. That is right." He further testified that Kroger employees did not take the outgoing freight into a truck, unless the truck driver laid the plate. Another employee, Earl Bohannan, a shipping clerk, testified: "Q. When a truck comes in, Mr. Bohannan, assuming a truck comes in for a shipment of crackers and cookies for Kansas City, the truck backs in there; who loads that truck? A. The truck driver himself loads it. Q. He loads it. Where does he get the merchandise from? A. One of the shipping clerks gives it to him. Q. Where does he give it to him at? A. He pushes it in this truck. Q. The shipping clerk pushes the merchandise into the truck? A. That is right. . . . Q. In other words, when a truck driver is getting merchandise from the Kroger place, the Kroger Company puts the merchandise inside the truck? A. That

is correct.'' He further said that Kroger employees were forbidden to lay a plate; that he had never laid a plate or seen a Kroger employee lay a plate for any truck driver; and that he was on the platform practically all the time.

Appellant's shipping clerk, Vernon Bosch, testified that whoever brought a truck in, was supposed to put down his own plate; that he didn't place the plate in question, nor know who did; that Kroger men were ''not supposed to'' place a plate; and that he had never seen a Kroger employee place a plate, other than for a Kroger truck. He said: ''That is our job to push the skid into the truck, positively, if there is a plate down,'' but if there is no plate down the truck driver ''carries it (the freight) from the dock himself.'' He further said that appellant's employees placed the plates for all trucks with Kroger bodies, whether they were St. Louis or out of town Kroger bodies. Other evidence offered by appellant need not be set out. We find no evidence as to the number of persons employed by appellant about the shipping platform.

Considering the above evidence in a light most favorable to respondent and disregarding appellant's evidence, unless [506] it aids the respondent's case, we consider the evidence entirely sufficient for the jury to infer and find that the plate was laid by some Kroger employee other than defendant Holtgrave. In so finding the jury would not have been required to pile one inference upon another, nor to guess and speculate as contended by appellant. The inference could be drawn from the facts and circumstances testified to by the witnesses. The plate was in place. It did not lay itself. It was selected and placed by some intentional act of human agency. The jury could believe the evidence favorable to respondent concerning whose business or duty it was to place the plate, who would need to place it in order to discharge a duty or comply with the custom in connection with placing outgoing freight in the semi-trailer and who had been placing plates under similar circumstances. If the jury believed and found that neither respondent, Blagg, nor Holtgrave, laid the plate, the jury could disbelieve either Bohannan or Bosch, or find from the facts and circumstances shown that some other employee selected and placed the plate in position. Martin v. St. Louis-San Francisco R. Co., 329 Mo. 729, 736, 46 S. W. (2d) 149, 152. Two Kroger employees, not named by respondent, were present with Holtgrave when respondent was injured. While the burden rested upon respondent to prove that some employee of appellant laid the plate, the respondent was not required to make that proof by the testimony of an eyewitness who saw the plate placed by an employee of the appellant. The fact that it was so laid could be shown by circumstantial evidence and the proof of facts and circumstances from which the inference could be drawn. Respondent was not required to make proof beyond a reasonable doubt,

but only to establish the fact as a reasonable probability. Van Brock v. First National Bank in St. Louis, 349 Mo. 425, 161 S. W. (2d) 258; Mauzy v. J. D. Carson Co., (Mo. App.), 189 S. W. (2d) 829, 833. The determination of the reasonable probabilities, the witnesses to be believed and the inferences to be drawn were for the jury. Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S. W. (2d) 125, 129; Hulsey v. Tower Grove Quarry & Construction Co., 326 Mo. 194, 30 S. W. (2d) 1018, 1030. The evidence was sufficient to support Instruction 1-A on the issue that a Kroger employee laid the plate, and to support a finding that it was not defendant Holtgrave.

The second assignment is based (1) upon the refusal of Instruction E and (2) upon the judgment entered against appellant, after the jury returned the verdict exonerating appellant's employee, Holtgrave. Instruction E told the jury "that plaintiff claims that the defendant Joseph M. Holtgrave laid the steel plate mentioned in evidence . . . and (claims) that defendant Kroger Grocery and Baking Company was negligent by reason of the alleged acts of defendant Joseph M. Holtgrave." It further told the jury that they could not find against Holtgrave unless he was negligent in the laying of the plate or in the operation of the hand truck or both and that they could not find against appellant unless they found that Holtgrave was negligent.

Appellant contends the petition stated a case on the principle of respondeat superior and on no other principle or theory. The petition makes no charge of negligence against appellant that is limited to the acts of Holtgrave, nor did respondent offer any direct evidence that Holtgrave personally laid the plate. On the issue mentioned, the petition charged that "defendants caused a flat steel plate . . . to be laid" and that defendants, their agents, servants and employees, negligently failed and omitted to provide a proper steel plate. The mere fact that Holtgrave delivered the first load, and would have needed to have had the plate in place before he could push the hand truck into the semi-trailer, did not require a finding that Holtgrave personally laid the plate, particularly in view of his denial. Neither the pleadings nor the evidence limited respondent to the acts and conduct of Holtgrave on the issue of appellant's negligent selection and placing of an improper plate. An acquittal of Holtgrave of negligence on this issue did not bar a verdict against appellant. Instruction E was properly refused. Judgment was properly entered against appellant, although Holtgrave was discharged. DeMoulin v. Roetheli, 354 Mo. 425, 189 S. W. (2d) 562, 564.

[507] Appellant assigns error on the trial court's refusal to direct a verdict in appellant's favor at the close of all the evidence. Appellant's theory is that respondent was guilty of contributory neg-

ligence as a matter of law, but in what respect is not clearly pointed out in the brief. Appellant's position apparently is that respondent voluntarily and unnecessarily placed himself in a dangerous position and that "by the exercise of ordinary care he should have realized that he was exposed to danger." We must consider the evidence favorable to respondent on this issue. Respondent was in the semi-trailer when the third loaded float arrived. The loaded float weighed in excess of 1000 pounds. One wheel of the float got up on the edge of the plate, which extended above the platform, and another wheel knocked the plate around at an angle and stopped against the plate. The float stuck or hung up. Respondent and Holtgrave looked it over and saw the plate was flat and that the upper edge extended about an inch above the platform. They discussed the matter. Holtgrave pulled the float back two or three feet. (We disregard evidence that Holtgrave was not on the platform at the time.) Respondent thought he intended to straighten the plate, although nothing had been said to that effect. Respondent had been standing two feet away and as the float was pulled back, he stepped up within a foot or so and was going to help straighten the plate, "the way they usually did it." He didn't think about the float being suddenly pushed forward. Nothing had been said to indicate that the float was to be moved forward. Without any warning, the float was shoved forward with force and violence and was right on respondent when he saw it. He did not have time to get out of the way. The front wheels of the float and the steel plate went off the platform, the plate went under respondent's feet. He was knocked over backwards, the float tilted upon its end and the merchandise fell on respondent.

Whether one is guilty of contributory negligence depends upon the particular facts and circumstances surrounding the occurrence that caused the injury. Graves v. Mo. Pac. R. Co., 342 Mo. 542, 550, 118 S. W. (2d) 787, 791. Respondent, in the semi-trailer, was somewhat below and in front of the loaded float. Defendant Holtgrave knew of his presence and had been discussing the cause of the difficulty with him. The condition of the plate and the cause of the difficulty were apparent. Respondent observed that the float was being withdrawn two or three feet. He was in view of its operator, who knew of respondent's presence. Under such circumstances, respondent had no reason to anticipate that the float would be shoved in and upon him with force and violence and without notice or warning. "As a general rule a man is not required to look for danger when he has no cause to anticipate danger or when . . . it is caused by the negligence of another." Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 414, 114 S. W. 1057, 1062; State ex rel. Elliott's Dept. Store Co. v. Haid, 330 Mo. 959, 51 S. W. (2d) 1015, 1017; Cento v.

Security Bldg. Co., (Mo. Sup.), 99 S. W. (2d) 1, 7. The issue of respondent's contributory negligence was for the jury.

Appellant assigns error on the giving of Instruction 1 requested by respondent. It is contended that the first paragraph of the instruction was misleading on an essential fact in the case and that the third paragraph assumes (1) that the steel plate was not lying flat on the platform and (2) that the hand truck was violently pushed. Appellant says the instruction requires no finding by the jury on either of these controverted issues. As stated, Instruction 1 was submitted upon the issue of negligent operation of the truck by both defendants and was based solely upon the conduct of Holtgrave. In the event of a finding for plaintiff thereunder a verdict was required against both defendants. The verdict was against appellant alone and, accordingly, we may infer that the jury did not find for respondent, nor against appellant, on the basis of the negligence submitted by this instruction. Since the verdict of the jury was not based upon this submission, errors, if any, in the instruction were not prejudicial to appellant. However, we do not consider the instruction erroneous. In the petition it was alleged that Holtgrave was "in charge of and foreman of loading operations on and [508] about the loading platform hereinafter mentioned." The answer admitted this allegation and the court instructed the jury that ". . . it is admitted . . . that defendant Holtgrave was . . . in charge of and foreman of loading operations on and about the loading platform mentioned in the evidence." Appellant contends the admission in the pleadings was for the court, and that the court could not state the admission in the same language to the jury. Appellant insists that the jury would have construed the statement to mean that Holtgrave was "on the loading dock at the time of the alleged accident"—a matter in issue on the pleadings and in the evidence. We must assume that the jury was made up of persons of ordinary intelligence who had a reasonable knowledge and understanding of the words used. Mueller v. Schien, 352 Mo. 180, 176 S. W. (2d) 449, 453. In view of the issues submitted in the instructions, the conflict of testimony concerning Holtgrave's presence on the platform when respondent was injured, and the finding by the jury for Holtgrave, we see no merit in the contention that the jury was misled into believing it was admitted that Holtgrave was on the platform when respondent was injured.

Did the third paragraph of the instruction assume facts? Before returning a verdict for respondent under this instruction, the jury was required to find that, prior to the time of the occurrence in question, Holtgave "knew or by the exercise of ordinary care could have known that the said steel plate was not laying flat on the said loading platform." Such a submission did not assume the plate was "not laying flat." Geary v. Kansas City, O. & S. R. Co., 138 Mo. 251, 259,

39 S. W. 774, 775; McMillan v. Bausch, (Mo. Sup.), 234 S. W. 835, 837; Moore v. St. Louis Transit Co., 193 Mo. 411, 420, 91 S. W. 1060, 1061; Sollars v. Atchison, T. & S. F. Ry. Co., (Mo. App.), 187 S. W. (2d) 513, 515. The instruction proceeded as follows, "and if you further find that defendant Holtgrave . . . pushed and propelled a loaded hand truck so that it suddenly and violently struck the edge of the steel plate mentioned in evidence, if you so find." Subsequently, the instruction submitted whether Holtgrave knew or by the exercise of ordinary care could have known certain facts "before moving and pushing said hand truck violently against said steel plate." In so stating the instruction did not assume that the hand truck was pushed "violently against said steel plate." The instruction had previously required a finding of that fact. The subsequent assumption of a fact previously hypothesized in an instruction is not error. Costello v. Kansas City, 280 Mo. 576, 219 S. W. 386, 391; Koonse v. Missouri Pac. R. Co., 322 Mo. 813, 18 S. W. (2d) 467, 473.

■ Error is assigned on the admission of certain evidence bearing on the issue of damages. Respondent testified that, on account of his injuries, he was unable to resume his work as a truck driver, earning $70.00 to $80.00 per week; and that he was the proprietor of a tavern and operated it himself with the help of his wife. He said he paid his wife a salary, but didn't "have any set salary, just according to what we make." The whole profit from the operation was estimated at about $60.00 to $70.00 per week. If the profit was $60.00, he "would consider" his wife's salary to be about $25.00, the balance was his. Appellant objected to the evidence concerning the part of the profit respondent considered as salary for his wife. The objection was that "under the law it is all one salary. . . . He is entitled to his wife's services. . . . He does not pay his wife any definite salary. . . . It would be too speculative to say what part he considered his wife's salary." Appellant contends that the use of the words "would consider," when there was no set salary, shows the testimony was based on speculation; that respondent did not pay his wife any amount of money as contracted wages; that the husband was entitled to his wife's services and she was not entitled to salary; that no agreement was shown to separate the wife's earning from her husband's; and that all of the profit of the business belonged to respondent. Appellant insists that the amount turned over to the wife could not be taken into consideration when computing respondent's damages and that the admission of the evidence was reversible error.

[509] As stated, respondent testified that his wife helped him operate the tavern and he paid her a salary. That she had no set salary, but was paid according to what was taken in, apparently on a percentage basis, did not make the testimony inadmissible as based upon

speculation. Respondent said that, if he took in $60.00 during the week, he would consider his wife's salary about $25.00. The testimony sufficiently evidenced the consent of the husband to the payment of a salary and the agreement and intention of the parties to a separation of the wife's earnings. See, Regal Realty & Investment Co. v. Gallagher, (Mo. Sup.), 188 S. W. 151, 153; Plummer v. Trost, 81 Mo. 425, 429; Farmers and Traders Bank v. Kendrick, 341 Mo. 571, 108 S. W. (2d) 62, 65. The amount so paid was an expense which reduced respondent's earnings. See, Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S. W. (2d) 30, 35. The court did not err in admitting the testimony.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.