HARRIETT L. THOMPSON, ROBERT N. CUNNINGHAM, JOAN D. CUNNINGHAM, and HARRIETT OSGOOD, Plaintiffs-Appellants, v. ECONOMY HYDRO GAS COMPANY, INC., a Corporation, and PHILLIPS PETROLEUM COMPANY, a Corporation, Defendants-Respondents, No. 43056—257 S. W. (2d) 669.

Division One, April 13, 1953.

Rehearing Denied, May 11, 1953.

*James A. Singer* and *John Torrey Berger,* of *Lewis, Rice, Tucker, Allen & Chubb, Thomas B. Curtis* and *Ward Fickie,* of *Biggs, Curtis, Biggs & Crossen,* and *C. V. Barnhart,* of *Barnhart & Wood* for plaintiffs-appellants.

*Moser, Marsalek, Carpenter, Cleary & Carter, F. X. Cleary* and
*O. P. Owen* for respondent Economy Hydro Gas Co., Inc.

1118

' *C. Kenneth Thies, L. A. Robertson, Alexander & Robertson* and *Ernest E. Baker* for respondent Phillips Petroleum Company.

VAN OSDOL, C.—Several plaintiffs have joined their claims in the total sum of $62,463.68 damages for loss of personalty in an explosion· at the house in which the personalty was used or stored, the house being the residence of the headmaster of the Country Day School of St. Louis.

The alleged explosive element was butane-propane gas, which had been supplied in condensed liquefied form to the Country Day School by defendant-respondent Economy Hydro Gas Company, Incorporated (sometimes hereinafter referred to as "Economy"), and which liquid gas had been purchased by Economy from Phillips Petroleum Company, defendant-respondent (sometimes hereinafter referred to as "Phillips").

Among other allegations of specific negligence, plaintiffs alleged negligence of defendants in failing to odorize or stench the gas with an artificial odorant of such character as to positively indicate the presence of gas, and in failing to test the gas for odor before installing it in the tank at Country Day School. The trial court, on Economy's motion, directed a verdict for that defendant at the close of all the evidence; and the jury returned a verdict for defendant Phillips and against plaintiffs on the issue of negligence of that defendant in failing to odorize the gas as submitted in plaintiffs' principal Instruction No. 2. Plaintiffs have appealed from the judgment for defendants.

Plaintiffs-appellants contend the trial court erred in directing a verdict for defendant Economy. Plaintiffs-appellants urge that under the evidence there was a common-law duty of Economy in the exercise of ordinary care to artificially odorize the gas or to test it prior to its sale and delivery to the ultimate consumer, Country Day School, to determine if the gas had been previously odorized; and that sub-

stantial evidence was introduced tending to show the gas had not been artificially odorized.

Plaintiffs-appellants further contend that Instruction No. 4, given at the instance of defendant Phillips, was erroneous in authorizing a verdict for that defendant if the jury found that the gas was artificially odorized (only) to the extent or degree "as to be discernible by a person with a normal sense of smell exposed to a flammable mixture of the gas with air"; and that Instruction No. 3, given at the request of defendant Phillips, was erroneous in advising the jury that the sole issue with respect to negligence of Phillips was whether Phillips negligently failed to odorize the liquid gas "so that it could be readily detected by the ordinary sense of smell." It is urged by plaintiffs-appellants that these two instructions were erroneous and were also in conflict with the assertedly correct submission of a gas supplier's duty as submitted in plaintiffs' Instruction No. 2, which hypothesized such duty as being that the gas should be "stenched with an artificial odorant of such character, as to indicate positively by a distinctive odor, the presence of such gases, down to concentration in air of not over one-fifth the lower limit of combustibility."

Plaintiffs-appellants also contend the trial court erred in the admission of evidence, and in permitting a witness to state a conclusion as to an ultimate fact.

Defendant-respondent Economy contends the trial court correctly sustained Economy's motion for a directed verdict. Economy urges that, as a retailer of gas produced by and purchased of Phillips, Economy did not, under the evidence, have the common-law duty to artificially odorize the gas or to make a minute and detailed inspection or test to determine if the gas had been odorized.

Defendant-respondent Phillips contends plaintiffs did not make out a submissible case as pleaded and submitted; that plaintiffs' Instruction No. 2 was erroneous, under the evidence introduced in this case, in submitting the issue of negligence of defendant Phillips in failing to odorize the gas "down to concentration in air of not over one-fifth the lower limit of combustibility"; that the issue of the jury was whether or not the gas was artificially odorized "so as to be discernible by a person with a normal sense of smell." But, says defendant-respondent Phillips, even if there was a duty to artificially odorize the gas as submitted in plaintiffs' Instruction No. 2, nevertheless Instruction No. 3, given at the instance of defendant Phillips, advising the jury that the only issue was whether the liquid gas was odorized "so that it could be readily detected by the ordinary sense of smell," and Instruction No. 4, directing a verdict for defendant Phillips, if the jury found that defendant Phillips had odorized the gas with "an odorant in such quantity so as to be discernible by a person with a normal sense of smell exposed to a flammable mixture of the gas with air," were not prejudicially erroneous under the facts of this case.

This, defendant-respondent Phillips says, is because the evidence shows the explosion occurred almost immediately after those present had arrived at the house, the scene of the explosion, and the failure to odorize the gas to the extent of a gas-air mixture less than flammable or combustible could not have been the cause of the injury to and loss of plaintiffs' property.

Defendant-respondent Phillips further asserts that the trial court did not err in the admission of evidence.

The contentions of the parties require a review of the evidence.

The Country Day School of St. Louis, situate in St. Louis County, maintains a residence for its headmaster. The headmaster's house, on July 28, 1947, was a rather large two-story building fronting to the eastward. The first floor of the residence building was divided into an entrance hall, seven rooms, and a butler's pantry. The house was heated by hot air from the furnace in the basement, the hot air being conducted through hot-air pipes venting through the walls of the rooms of the first floor (and second floor) of the building; there was a "clothes-chute" from the upper floors to the basement and two ash traps at fireplaces, but no stairway connected the living rooms of the first floor with the basement. The sewage plumbing was connected with a septic tank. Access to the basement was afforded by a stairway leading down from the garage which was on the west side and built in as a part of the residence building. An electric switch governing the motor of a "furnace blower" was affixed to the furnace frame or housing. Butane-propane gas was utilized at the residence for heating water and cooking, the hot-water heater being in the basement near the furnace. Gas pipes fed the burner of the hot-water heater (and the burners of the cookstove on the first floor of the building) from a 155-gallon liquefied petroleum storage tank embedded in the ground a few feet from the building. The storage tank was supplied or "serviced" by defendant Economy under an arrangement (with Country Day School) whereby Economy was to "keep it filled."

As stated, the liquefied gas so supplied by defendant Economy was purchased from defendant Phillips and was received by Economy in Economy's tank trucks at the Phillips bulk plant in East St. Louis. When Economy received the liquid butane-propane at the Phillips plant the employees of Phillips pumped in butane to 70% of the desired quantity from its No. 3 (butane) tank; and then pumped in 30% propane from a [672] storage tank containing propane, which propane Phillips had purchased of The Texas Company at its plant at Selmaville near Salem, Illinois. The butane stored in the Phillips No. 3 butane tank at its bulk plant had been piped into the tank either directly from the pipeline of the Phillips Pipeline Company (a subsidiary of Phillips), or from a storage tank containing butane located several hundred feet from the No. 3 butane tank at the bulk plant.

It was shown in evidence that, near the Phillips No. 3 tank at the bulk plant, there are valves and other apparatus by which an odorizing agent may be introduced into the pipes prior to pumping the butane into the No. 3 tank, the odorizing agent utilized by Phillips being one pound of ethyl mercaptan to ten thousand gallons of butane.

The petroleum industry has recognized ethyl mercaptan as an artificial odorant of gas. Ethyl mercaptan "stinks like rotten cabbage," and is introduced as a safety precaution to warn of the presence of gas.

Phillips made no record of the odorizing operation, but, when a customer's tank truck was loaded with the liquefied gas, a delivery ticket was made out by an employee of Phillips. A form on the ticket was "filled in" so that the ticket contained the completed statement, "Stenched with 1 Lbs. Ethyl Mercaptan per 10,000 Gals." The Phillips employee who made the entry on a particular delivery ticket was not necessarily the same person who had performed the odorizing operation.

The Texas Company was under obligation to Phillips to odorize the propane sold to Phillips. Phillips made no test at its plant to determine if the propane had been artificially odorized.

Economy did not odorize the liquefied gas purchased and received by it from the Phillips plant, and made no test to determine if the liquid had been odorized, save and except that the employees of Economy, drivers of Economy's tank trucks, were able to discern odor indicating the presence of ethyl mercaptan when they "bled" the residue from the connecting hose when detached after the liquid was received into the tank trucks of Economy at the Phillips bulk plant, and again after the liquid was transferred to the storage tank at the Country Day School. Economy maintained no storage tank for liquid gas. Economy kept the liquid, purchased of Phillips, in Economy's tank trucks until it was sold and delivered to Economy's customers, the ultimate consumers.

The headmaster of the Country Day School, plaintiff-appellant Robert N. Cunningham, had been away on his vacation since June 12, 1947, and, anticipating his return, Lilly J. Walls, dietician, supervisor and housekeeper, accompanied by the caretaker, Dave Warner, and his wife, went to the headmaster's house in the morning of July 28th to open and prepare the house for the headmaster's return. Warner unlocked and opened the door. The witness, Lilly J. Walls, testified that she asked Warner if it was possible for him to heat some water; the ladies entered the main entrance hall; and Warner departed to go around the house and "into the garage in that basement entrance." Neither the witness nor Mrs. Warner smelled any odor of gas. They both had a good sense of smell. They made a perfunctory examination to determine what was necessary to clean and put the house in order. "Well, I walked through the hall to the living room, and to look and

see if the drapes were up or not, and if there was anything in the way of cleaning, and there were no drapes up or anything, and I glanced into the dining room there and turned and walked back out through the same door, that is back towards the door I came in from the outside.'' They were in the house ''a couple of minutes,'' or maybe three. As they moved toward the front door there was a ''terrific noise.'' The witness, Lilly J. Walls, ''was amazed to see the floor break open in front of me and under me.'' The witness sustained burns on the exposed parts of her body, as did Mrs. Warner, and both were rendered unconscious, at least for the moment. Having regained consciousness and having moved or having been carried from the building, and while awaiting the arrival of an ambulance, the witness (and Mrs. Warner) saw Warner approach, ''I could see his burns, with the protein dripping from the burns, and his [673] lack of clothes, and his eyes were rather glazed,'' and he seemed to be in what ''might be termed as a state of shock.'' Warner exclaimed, '' 'I didn't strike any match, nor I didn't smell any gas.' '' It may be inferred that, when he went into the basement, Warner ''switched on'' the furnace blower; and that the gas was ignited by a spark from the switch or from the motor of the blower.

The testimony of the two ladies, Lilly J. Walls and Mrs. Warner, that they smelled no odor of gas while they were on the first floor was negative in character. Both were possessed of a normal sense of smell. In our opinion their testimony that they smelled no odor was substantial evidence tending to show that whatever gas had become diffused in the atmosphere in the rooms of the first floor had no discernible odor. The evidence of the statement of Warner, assuming he had a normal sense of smell, would be invested with positive probative force, we believe, and would be sufficient in affording a substantial basis for the conclusion that the gas had not been odorized even to such extent as to be discernible at a combustible mixture. His statement, ''I didn't smell any gas,'' was that of one who but momentarily before, it seems, had been in an atmosphere obviously so diffused with gas as to be combustible. See the discussion in Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W. 2d 386, pertaining to the probative force of negative evidence on the issue of the presence of odor in gases.

As we have said, Economy, supplier of liquefied petroleum gas to the ultimate consumer, had purchased the commodity from Phillips, the producer or manufacturer. We believe that Economy cannot, as a matter of law, be held to have had no duty to artificially odorize the gas or to see that it had been odorized, in the circumstances shown in evidence, when it supplied the liquefied gas to Country Day School, an ultimate consumer. Restatement, Torts § 388. The gas in itself was dangerous and known to be dangerous, so known to be dangerous that it was shown it has become the custom and practice of the petroleum industry to artificially odorize such gases ''so they

will smell at one-fifth of their lower inflammable limit" in order that a timely warning is to be had of the presence of gas. It was also shown in evidence that the National Board of Fire Underwriters by N.B.F.U. Pamphlet Number 58 has advised that (subject to certain exceptions not material in this case) "All liquefied petroleum gases shall be effectively odorized by an approved agent of such character as to indicate positively, by a distinctive odor, the presence of gas down to concentration in air of not over one-fifth the lower limit of combustibility." (There was evidence introduced tending to show that the lower limit of the combustibility of butane gas is 1.55 percent; of propane gas, 2.15 percent. These figures represent volumetric percentages of gas-air mixture in each case.)

It has been written that, from a careful study of the gas cases elsewhere and with due attention to the judgment of the soundest courts and opinions of the ablest judges of the country, we have been able to deduce and ascertain the rule that, in view of the highly dangerous character of the commodity, gas, being supplied or transported and because of its well-known tendency to escape and become an element not only entailing possible but probable death and disaster, the applicable principle is that a gas supplier should exercise the care and precautions proportionate to the danger. So it may be said that an ordinarily careful person in handling such a commodity should exercise such precautions as should be commensurate with the dangers to be reasonably anticipated in the shown circumstances. Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W. 2d 223; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W. 2d 601; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W. 2d 292; Sipple v. Laclede Gaslight Co., 125 Mo. App. 81, 102 S.W. 608; Nomath Hotel Co. v. Kansas City Gas Co., 204 Mo. App. 214, 223 S.W. 975; Gas Service Co. v. London & Lancashire Ins. Co., 8 Cir., 188 F. 2d 404; Womack v. Central Georgia Gas Co., 85 Ga. App. 799, 70 S.E. 2d 398; Doxstater v. Northwest Cities Gas Co., 65 Idaho 814, 154 P. 2d 498; Restatement, Torts § 388. (The Legislature by statute, effective July 18, [674] 1948, has now recognized the dangerous character of liquefied petroleum gases, and has authorized the promulgation of regulations setting forth minimum general standards relating to storing, handling and transporting such gases, and "specifying the odorization of said gases and the degree thereof." Chapter 323, RSMo 1949, V.A.M.S.) And see again Winkler v. Macon Gas Co., supra, in which case it was recognized that plaintiff Winkler made out a submissible case of negligence, as against the supplier, Macon Gas Company, in failing to sufficiently and properly odorize the gas supplied to an ultimate consumer. In the instant case we consider the defendant Economy is, under the facts introduced into evidence in this case, in the position of the Macon Gas Company in the Winkler case as regards a duty to exercise due care, and is in a position unlike that of Phillips Petroleum

Company in the Winkler case. We hold that the trial court erred in sustaining Economy's motion for a directed verdict.

We now turn to the contentions relating to error in instructing the jury, particularly the contentions relating to error in Instruction No. 4 given at the instance of defendant Phillips, which instruction was as follows,

"The Court instructs the jury that if you find and believe from the evidence that at the time and place the liquid propane-butane was delivered by defendant, Phillips Petroleum Company, to the defendant, Economy Hydro Gas Co., Inc., the said defendant Phillips Petroleum Company had placed or cause(d) to be placed in said liquid propane-butane mixture an odorant in such quantity so as to be discernible by a person with a normal sense of smell exposed to a flammable mixture of the gas with air, if you so find, then plaintiffs are not entitled to recover against defendant, Phillips Petroleum Company, and your verdict must be against the plaintiffs and in favor of the defendant, Phillips Petroleum Company."

We notice the instruction directed a verdict for defendant Phillips if the jury found the liquid propane-butane had been odorized with an odorant in such quantity as to be discernible by a person with a normal sense of smell exposed to a "flammable mixture of the gas with air." But we have seen that it could be reasonably found to be a proper precautionary measure to odorize the liquid so that it would contain a sufficient odorant to warn of the presence of gas in air below the lower limit of flammability or combustibility. We are of the opinion Instruction No. 4 was prejudicially erroneous under the evidence introduced in the instant case.

There was evidence that on May 16, 1947, and again July 23, 1947, Economy had delivered gas to the Country Day School storage tank. The headmaster's house was not occupied after June 12th. The average daily consumption over a period of 470 days prior to May 16th was 2.149 gallons. It was shown that, if it were assumed there was a daily consumption of 2.149 gallons per day while the house was occupied from May 16th to June 12th, 78 gallons of gas escaped between June 12th and July 23d. An expert witness for plaintiffs testified that Lilly J. Walls and Mrs. Warner would not have sustained burns on the exposed parts of their bodies had there not been an explosive or combustible mixture on the first floor of the building. They "would not have sustained any burns if there had been gas to the concentration less than the explosive limit on the first floor." The witness further stated that in his opinion, if 78 gallons of gas had escaped after June 12th and prior to July 23d, gas would have been on the first floor on July 28th, when the explosion occurred, in sufficient quantities to have been detected by a person with a normal sense of smell, assuming the liquid gas had theretofore been odorized in the manner advised in

N.B.F.U. Pamphlet Number 58, supra. On the other hand, an expert witness for defendants was of the opinion there was not any "quantity of gas on the first floor that constitutes an explosive mixture—between the lower and upper limits—explosive limits." Thus there was opinion evidence from which it could be reasonably inferred that there was not a combustible mixture [675] on the first floor prior to the explosion; yet it could also be reasonably inferred there was a quantity of gas on the first floor sufficient to be discernible if the liquid gas had theretofore been so odorized as to indicate positively the presence of gas "down to concentration in air of not over one-fifth the lower limit of combustibility." But, as stated, the witnesses Lilly J. Walls and Mrs. Warner smelled no odor of gas during the two or three minutes they were on the first floor of the building, and it is within the realm of reasonable probability that, had the odor been sufficient to alert them, they would have warned Warner of the presence of gas in the house before he entered the basement and switched on the furnace blower. We are of the opinion that a jury could have reasonably found there was gas in the house which was not sufficiently odorized below the lower limit of combustibility and that the insufficiency of the odorization was the proximate cause of the loss of plaintiffs' property.

We do not approve plaintiffs' Instruction No. 2 in its entirety, but it is not here said that an hypothesis in a plaintiff's instruction of the extent or degree of odorization as to indicate positively by a distinctive odor, to a person with a normal sense of smell, the presence of such gases down to concentration in air of not over one-fifth the lower limit of combustibility, as shown in evidence to have been recognized by custom or practice of the petroleum industry, was erroneous, if a plaintiff desired, as did plaintiffs herein, to submit that a defendant failed to odorize the gas to that degree; that such failure was negligence; that such negligence was a proximate cause of a plaintiff's injury. However, it would seem, if a defendant submitted as a defense that gas had been odorized to that degree, it should also be submitted that the odorization to that degree was such a warning as a person in the exercise of ordinary care would give in like circumstances. But, after all, we believe the issue in this common-law action was whether defendant Phillips was negligent in failing to properly and sufficiently odorize the liquid gas so as to warn a person with a normal sense of smell, in the circumstances of its intended use, of the presence of escaped gas in air. We do not say as a matter of law what manner or degree of odorization would, in the exercise of due care, be sufficient. We think that is a jury question. See and compare Knorp v. Thompson, 357 Mo. 1062, 212 S.W. 2d 584. Nor do we say that Phillips' Instruction No. 4, submitting the negative of negligence of Phillips in failing to odorize the gas (only) to the extent that it was "discernible by a person with a normal sense of smell exposed to a flammable mixture of the gas with air," would be prejudicially er-

roneous in a shown factual situation where failure to odorize to a greater extent or degree could not have been reasonably found to have been a proximate cause of a plaintiff's injury. But, we believe Instruction No. 4 was prejudicially erroneous in the instant case because, as stated, it could be reasonably found that a failure, if so, to properly odorize to the degree discernible by a person with a normal sense of smell exposed to less than a flammable mixture of the gas with air was the proximate cause of the loss of plaintiffs' property.

■ Instruction No. 3, given at the instance of defendant Phillips, was as follows,

"The Court instructs the jury that in this case the plaintiffs charge that the defendant, Phillips Petroleum Company, negligently failed to odorize the liquid propane-butane gas furnished by it, to the Economy Hydro Gas Company, a corporation, so that it could be readily detected by the ordinary sense of smell, and that this is the sole and only issue before you with respect to any negligence of the defendant, Phillips Petroleum Company."

This instruction, purporting only to limit the issues, was cautionary in nature. It did not submit the issue and authorize or direct a verdict. The giving of a cautionary instruction is usually within the trial court's discretion. We cannot see that the Instruction No. 3 was prejudicial to plaintiffs.

We find it unnecessary to further prolong this opinion by considering contended [676] errors in the admission of evidence. Possible errors in the admission of evidence, if any be apparent to counsel, may be avoided upon a retrial.

The trial court's judgment, as to both defendants, should be reversed and the cause should be remanded.

It is so ordered. *Lozier* and *Coil, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.