Mary L. SHAFFER, Respondent,

v.

SUNRAY MID–CONTINENT OIL COMPANY, a Corporation, and Fulton Hydro-Gas Company, a Corporation, Appellants.

No. 47446.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Rehearing Denied June 13, 1960.

Howard F. Major, Columbia, Wilbur F. Daniels, Fayette, Truman B. Rucker, Tulsa, Okl., David A. Oliver, Columbia, for Sunray Mid-Continent Oil Co.

Clyde M. Burch, Fulton, for Fulton Hydro-Gas Co.

Roy D. Williams, Boonville, William H. Becker, Terence C. Porter, Columbia, Clyde Rogers, Fayette, for respondent.

JAMES W. BROADDUS, Special Judge by transfer order.

In this action plaintiff sought damages from defendants in the amount of $100,000 on account of personal injuries sustained by her as a result of an explosion. The jury returned a verdict for defendants and judgment was entered thereon. Plaintiff filed a motion for new trial which the trial court sustained on the ground of error in giving Instruction D-8. Defendants have appealed.

Plaintiff's second amended petition, upon which the case was tried, contains several grounds of negligence. The case was, however, submitted upon the sole charge that defendants were negligent in supplying the plaintiff with a mixture of liquid petroleum gas, referred to as L-P gas, which was not odorized so that its presence could be detected by the plaintiff or by an ordinary person.

Defendants filed answers denying negligence on their part, and alleging that plaintiff was negligent and that such negligence directly caused or contributed to cause any injuries she may have sustained.

Plaintiff, who was 63 years of age on May 31, 1953, was on that date living on a farm located approximately four miles east of Boonville, Missouri, in Howard County. In late 1940 or 1941, a liquefied petroleum system, known as a Hydro-Gas system, was installed at the plaintiff's home. The storage tank to this system was located below the ground outside the house. The four appliances attached to the liquefied petroleum gas system were, according to plaintiff's testimony, two room heaters, a cookstove and a hot water heater, the latter being the only gas appliance in operation in the basement of the house. The hot water heater was equipped with a thermostat which would turn off the main burner to the heater if the pilot light went out but which would not shut off the flow of gas through the pilot valve if the pilot light was off. In order to completely shut off the flow of gas to the heater, it was necessary to turn two manual controls, one control shutting off the pilot valve and one shutting off the line to the main burner. Plaintiff's witness Scheidt testified that approximately 1,500 to 2,000 BTU's of gas per hour would escape through the pilot valve if the pilot light went out and the manual control to the pilot was not turned off.

Plaintiff was sold 123 gallons of L-P gas, a butane-propane mixture, by defendant Fulton Hydro-Gas Company on January 5, 1953. Plaintiff testified that she knew of no other purchase of gas for this tank after January 5, 1953. This gas was delivered by truck to plaintiff's underground tank by an employee of Fulton Hydro-Gas Company. The truck used to deliver the 123 gallons of gas to the plaintiff's tank had been filled from a storage tank of defendant Fulton Hydro-Gas Company located at McCredie, Missouri. The gas placed in this storage tank was taken from a railroad tank-car which had been filled at Benton, Louisiana, on December 12, 1952, by the Sunray Oil

Corporation, now defendant Sunray Mid-Continent Oil Company.

Plaintiff testified that she returned to her home on the morning of May 31, 1953, after spending the night in New Franklin, Missouri; that after preparing and eating her breakfast, she started to wash the dishes at approximately 8:30 a. m., and found that the water was not hot; that she went to the basement and found that neither the main burner nor the pilot light from the hot water heater were burning; that she had a good sense of smell; that although she smelled no gas in the basement at that time, she turned both the pilot valve and the main burner valve clockwise; that she did not hear any hissing noise when she went to the basement and turned the control valves; that she left the basement after turning the control valves and went outside to the north side of the house and opened a basement window by pushing it inward; that she also left the door to the basement open.

Plaintiff further testified that the walls and floor of the basement were concrete; that there was an opening at the top of the south wall and also an opening in the south wall with a trench leading to the outside; that there was a small opening on the west wall above the electric water pump.

Plaintiff testified that she did not return to the basement until approximately 1:30 p. m., on the same day; that she did not smell any odor of gas when she returned to the basement; that she opened a small door located toward the bottom of the heater and while bent over from the waist, struck a match, at which time an "explosion" occurred; that she had not turned the control valve to the pilot light prior to the time she struck the match; that after she struck the match she noticed a yellow color about the basement and when she looked down she saw that her clothing was burning; that part of her hair was burned off at the front, the burned area running in a semi-circle from above the left eye to the right ear; that her dress and slip were burned off and fell to the floor in a ring

of ashes; that she was alone in the house at the time; and that there was no fire other than that about her person, there being no damage to the house itself.

Three persons went to plaintiff's home shortly after the alleged explosion. Romie Boggs and his wife, Ethel, were the first persons to arrive, having heard the plaintiff calling for an ambulance on a party line telephone. They found the plaintiff in bed when they arrived. Romie Boggs testified that he smelled the odor of burnt flesh and clothing, but no odor of gas in the house. Ethel Boggs testified that she smelled the odor of burnt clothing, hair and flesh, but no odor of gas in the house. Ethel Boggs did not go to the basement of the house. Romie Boggs testified that he went to the last step above the basement floor, but that he did not go further and did not examine the hot water heater. He testified that while on the steps he smelled no odor of gas. Boggs testified that as he turned to go back up the basement steps he met John Payne, a tenant on plaintiff's farm. Payne, testifying for defendants, stated that he went down into the basement and turned off the gas, which was on. Payne also testified that while he was in the basement he smelled gas.

There was a great deal of testimony, pro and con, in regard to the question of whether or not the gas sold by the defendant Fulton Hydro-Gas Company to the plaintiff was properly odorized. A summary of this lengthy testimony would be irrelevant to the issues in this appeal.

The court gave at the request of the defendants, Instruction D–8, which is as follows:

"The Court instructs the jury that it is *admitted* by the plaintiff that on the 31st day of May, 1953, prior to the explosion mentioned in evidence, the flame of the pilot light on the hot water heater mentioned in evidence and located in the basement of plaintiff's house had become extinguished, that

gas had escaped into the basement of plaintiff's house where said hot water heater was located, that plaintiff knew that said pilot light had become extinguished, that plaintiff feared that gas had escaped into said basement, that plaintiff attempted to re-light said hot water heater, and for that purpose struck a match, and that the explosion mentioned in evidence resulted from gas which had escaped from said hot water heater. In this regard the Court instructs the jury that if you find and believe from the evidence that the act of plaintiff in striking said match to re-light said hot water heater was negligence on her part, and if you further find and believe that such negligence on the part of the plaintiff, if you so find, directly and proximately caused or contributed to cause the explosion mentioned in evidence, then your verdict must be for the defendants." (Emphasis ours.)

The trial court's order sustaining plaintiff's motion for new trial reads as follows:

"Now on this 16th day of January, 1959, the Court having heard the arguments of counsel on plaintiff's Amended Motion for New Trial filed herein, and being fully advised in the premises, does hereby order that said Amended Motion for New Trial be sustained, and as grounds therefor the Court finds Instruction D-8, specified in paragraph 5 of Plaintiff's Amended Motion for New Trial to be erroneous, in that said instruction submits the issue of contributory negligence to the jury on the basis of 'the act of plaintiff in striking said match to re-light said hot water heater' without submitting any facts or attending circumstances to the act of striking said match to aid the jury in determining the issue of contributory negligence; that the first paragraph of said Instruction D-8 does not accurately summarize the admissions and testimony, is misleading and unduly emphasizes the admissions stated in said first paragraph without submitting all of the pertinent circumstances leading up to the act of striking the match to re-light the water heater, such as the act of plaintiff in opening a basement window to ventilate the basement, waiting a period of almost five hours after discovering the pilot light on the water heater to be out, and experiencing no odor of gas immediately prior to the act of striking a match to re-light the heater."

In reviewing the action of the trial court we must keep in mind the well settled rule "that when a motion for new trial is sustained an appellate court will be more liberal in upholding such action than it might be in reversing a judgment on the same ground on appeal. Thompson v. St. Joseph R., L. H. & P. Co., 345 Mo. 31, 131 S.W.2d 574; see also Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297; Taylor v. Farmers Bank of Chariton County, 349 Mo. 407, 161 S.W.2d 243. This is because the trial judge, having participated in the trial, had the best opportunity to determine the effect of any error; and granting a new trial is the exercise of judicial discretion which will be upheld unless abused or clearly erroneous." Teague v. Plaza Express Co., 356 Mo. 1186, 1192, 1193, 205 S.W.2d 563, 566. In that case, as in the case at bar, the trial court had sustained a motion for new trial because of error in an instruction. That was also true in the Taylor case cited in the Teague opinion.

It is apparent from the transcript that the dominant issue in this trial upon which liability depended was whether the gas in question had been odorized effectively or odorized at all; and whether plaintiff was guilty of contributory negligence (which depended principally upon the question of effective odorization). The plaintiff offered ample evidence of negligent failure sufficiently and effectively to odorize the gas, and submitted the case in Instructions P-1 and P-2 under the common law duty

as fully discussed in the cases of Thompson v. Economy Hydro Gas Co., 363 Mo. 1115, 257 S.W.2d 669, and Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386.

■ Instruction D–8 was not a converse instruction, but was a verdict directing instruction upon the issue of contributory negligence—an affirmative defense. The correct rule is that instructions authorizing a verdict (for plaintiff or for defendant on an affirmative defense) must require the finding of all essential fact issues necessary to establish the legal proposition upon which the right to it is based. Dill v. Dallas County Farmers' Exchange, Mo. Sup., 267 S.W.2d 677, 680.

■ In the instant case the trial court found the instruction to be erroneous in that it submitted the issue of contributory negligence "on the basis of 'the act of plaintiff in striking said match to re-light said hot water heater' without submitting any facts or attending circumstances to the act of striking said match to aid the jury in determining the issue." Since the striking of a match to re-light a hot water heater is not in and of itself negligence as a matter of law (Winkler case, supra, 238 S.W.2d loc. cit. 390) this instruction singling out this act, without regard to the circumstances under which the match was struck, injected a false issue into the case, assumed the striking of a match without actual or constructive knowledge of the danger involved was negligence in and of itself and took from the jury its exclusive function of determining whether or not the plaintiff was negligent under the circumstances shown in the evidence. It is a well settled rule that whether one is guilty of contributory negligence depends upon the particular facts and circumstances surrounding the occurrence that caused the injury. Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 28, 206 S.W.2d 501, 507.

In the case of Karch v. Stewart, Mo.Sup., 315 S.W.2d 131, 137, a similar instruction was held to be prejudicially erroneous. In that case the court stated: "Instruction No. 1, however, went much further; it specifically assumed that the bald fact of operation of defendants' car 'across and onto the wrong side of the highway', if found to be the fact, was negligence. In so declaring, the instruction not only injected a false issue into the case but it also took from the jury its exclusive function of determining whether Stewart was negligent in causing defendants' car to skid, which, certainly, was an essential element of plaintiff's right to recover. In so instructing the jury, the court prejudiced the rights of defendants. Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, 1051; Glowacki v. Holste, Mo., 295 S.W.2d 135, 139.''

To the same effect is the rule of Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500, 501. The rule in that case was violated because this was a verdict directing instruction, which not only failed to hypothesize (1) that the act of lighting the match was negligence under "the facts and circumstances shown by the evidence" (loc. cit. 501), but (2) also failed to hypothesize the highly controverted facts with respect to odorization and actual or constructive knowledge of the danger of the striking of the match by the plaintiff. It was not hypothesized that plaintiff's version of the precautions she took were not true, or that she should have realized the likelihood of injury in the exercise of care.

■ As we have stated, the principal contested issue in this case was whether or not the gas had been sufficiently and effectively odorized. This was submitted in plaintiff's instructions. Most of the evidence, except on the issue of damages, was addressed to this issue. By directing a verdict without reference to this controverted issue, Instruction D–8 actually precluded the jury from consideration of the vital issue in the case.

As shown in its order the trial court found that the instruction did "not accurately summarize the admissions and testimony, is misleading and unduly em-

phasizes the admissions stated in said first paragraph without submitting all of the pertinent circumstances leading up to the act of striking the match to re-light the water heater, such as the act of plaintiff in opening a basement window to ventilate the basement, waiting a period of almost five hours after discovering the pilot light on the water heater to be out, and experiencing no odor of gas immediately prior to the act of striking a match to re-light the heater."

The alleged "admissions" of plaintiff are contained in paragraph 14 of her amended petition as follows:

"That on the 31st day of May, 1953, the pilot light on the hot water heater aforesaid in plaintiff's home became extinguished and L-P gas supplied by the defendants escaped into the room in plaintiff's house where said hot water heater was located; that the plaintiff learned that the pilot light had become extinguished, and fearing the presence of gas in said room, although there was no detectable odor thereof, opened the windows as a precautionary measure and remained out of the room for several hours; that thereafter plaintiff returned to said room and being unaware of the presence of L-P gas therein and detecting no odor thereof, attempted to relight the hot water heater and for that purpose struck a match; * * *."

▰ As is to be seen the instruction completely ignores the fact that plaintiff alleged and testified that she at no time detected any gas odor; (2) that she opened the window, and (3) remained out of the basement for about five hours before attempting to light the heater. The instruction singled out for comment certain alleged admissions of the plaintiff and gave undue prominence to them, while ignoring the plaintiff's other statements. It has long been the rule in this State that an instruction which singles out a particular fact and gives it undue prominence in discrim-

ination of other facts bearing on the same issue is erroneous. Spalding v. Robertson, 357 Mo. 37, 49, 50, 206 S.W.2d 517, 523.

▰ Defendants claim that the order of the trial court finding Instruction D-8 erroneous should be reversed because plaintiff's Instruction P-13 on the burden of proof on the issue of contributory negligence mentioned "the alleged contributory negligence submitted in other instructions" and thereby plaintiff "acquiesced" therein and is not in a position to urge that Instruction D-8 was erroneous in the particulars set forth in the order sustaining plaintiff's motion for new trial. In support of their contention defendants rely mainly upon the case of Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756. On March 14, 1960, this court En Banc handed down its opinion in the case of Myers v. Buchanan, Mo., 333 S.W.2d 18, 23. In that case, at plaintiff's request, the court gave Instruction No. 11, which advised the jury that defendants had asserted as a defense that plaintiff was guilty "of contributory negligence as *submitted in other instructions.*" By reason of this reference in plaintiff's instruction the defendants there contended that "the plaintiff has acquiesced in the same, has adopted the requirements thereof and has waived any right to complain" of the errors in defendants' Instructions 6 and 7. As is to be noted, the language in Instruction 11 which we have italicized is identical with that contained in Instruction P-13 in the instant case. In the Myers opinion the court stated that it was convinced by a review of its former decisions that the Ferguson case, supra, made an erroneous application of the rule of invited error. The Myers case says:

"The rule that a party cannot complain on appeal of errors committed or invited by himself applies to instructions, but the better view is that 'a party is not estopped by the rule of invited error unless it appears from the record that the court was led or induced by him to commit the error.' * * *

Since the plaintiff did not voluntarily adopt the defendants' theory of contributory negligence or the manner of submitting it, he did not invite the error and cannot be held to have waived his objections or to be estopped to complain of the instructions. Ferguson v. Betterton to the extent that it conflicts with the views expressed herein is overruled."

We therefore rule the contention against the defendants and hold that the trial court did not abuse its discretion in granting a new trial on account of the errors contained in Instruction D–8.

The order granting plaintiff a new trial is affirmed and the cause is remanded.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.